1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CONDALEE MORRIS,

                                    Plaintiff,

            v.

M BARRA, Program Sergeant; L MILLS,
Correctional Officer; D WHITE, Lieutenant; GJ
JANDA, Warden; MACE, Medical Staff; and
JANE DOE, Medical Staff,

                                    Defendants.

Civil No.     10-CV-2642-AJB (BGS)

**REPORT AND RECOMMENDATION TO
GRANT IN PART AND DENY IN PART
DEFENDANTS' MOTION TO DISMISS**

        On August 12, 2011, Plaintiff Condalee Morris, a state prisoner proceeding *pro se* and in forma pauperis ("IFP") in this civil rights action filed pursuant to 42 U.S.C. §1983, filed a second amended complaint. ("SAC," Doc. No. 39.)  On August 29, 2011, Defendants M Barra, G J Janda, L Mills and D White filed a motion to dismiss the second amended complaint pursuant to Fed.R.Civ.P. 12(b) for failure to exhaust administrative remedies as to claims against Mills and Barra and for failure to state a claim as to claims against White and Janda.[1]  (Doc. No. 43.)  Plaintiff Condalee Morris filed a response in opposition on September 19, 2011.  (Doc. No. 49.)  Defendants filed a reply in support of their motion on September 29, 2011.  (Doc. No. 55.)  After Defendants' reply, Plaintiff submitted additional documents supporting his opposition to the Defendants' motion

---

[1]Defendants provided Plaintiff with a *Wyatt* notice informing Plaintiff of the requirements and consequences of Defendants' non-enumerated 12(b) motion to dismiss for failure to exhaust administrative remedies.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).  (Doc. No. 43-2.)

to dismiss. (*See* Doc. Nos. 77, 81, 83, & 85.) In light of Plaintiff's additional submissions, the Court permitted Defendants to file a supplemental reply. (Doc. No. 92.) Defendants filed a supplemental reply on December 12, 2011. (Doc. No. 96.) Plaintiff filed an additional sur-reply on December 21, 2011. (Doc. No. 96.)

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation (R&R). The Court determines that this matter is appropriate for resolution without oral argument and submits the motion on the parties' papers pursuant to Local Civil Rule 7.1(d)(1). For the reasons set forth below, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

### Background

Plaintiff Condalee Morris is a state prisoner proceeding pro se and in forma pauperis on his Second Amended Complaint filed pursuant to 42 U.S.C. §1983.[2] (SAC at 1.[3]) In his SAC, Plaintiff alleges that Defendants Mills and Barra sexually assaulted Plaintiff and used excessive force in violation of his Eighth Amendment rights. (SAC at 5-9.) Plaintiff alleges Defendants Barra, Mace, and Jane Doe violated his Eighth Amendment right to adequate medical care. (SAC at 10-13.) Plaintiff alleges Defendants White and G J Janda violated his Fourteenth Amendment right to due process. (SAC at 14-16.) Plaintiff's claims against Defendants arise out of an encounter Plaintiff had with Defendant Mills and Barra on August 12, 2010, the medical treatment Plaintiff received following this encounter, and a disciplinary hearing regarding the encounter held on September 8, 2010.

Plaintiff's allegations against Defendant Mills and Barra for excessive force

According to Plaintiff's SAC, on August 12, 2010 Plaintiff and inmate Garcia went to the dining hall for dinner. (SAC at 5.) Upon walking into the dining hall, Defendant Mills asked

---

[2]The Court notes that Plaintiff in his SAC requests a three-judge court pursuant to 28 U.S.C. §2284. (SAC at 1.) Under §2284, a three-judge district court is convened when otherwise required by Act of Congress or when an action is challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body. Plaintiff's action does not fall within one of these circumstances, and therefore a three-judge court is not required.

[3]For consistency and ease of reference, references to Plaintiff's filings use the court-generated page numbers.

10cv2642-AJB

1   Plaintiff to go back out of the hall and tuck in his shirt.  (*Id.*) Plaintiff complied, but untucked his

2   shirt again before he sat down at the table.  (*Id.*) On his way out of the dining hall, Defendant Mills

3   stopped Plaintiff and asked for his i.d. card.  (*Id.*)  Plaintiff told Defendant Mills that he did not have

4   one.  (*Id.*)  Defendant Mills then searched Plaintiff for contraband or weapons, but did not find

5   anything.  Plaintiff and inmate Garcia then went to the "B" yard clinic to get their medication.  (*Id.*)

6        While waiting at the "B" yard clinic for Garcia to get his medication, Defendant Mills asked

7   Plaintiff to walk with him back to the front of the dining hall.  (*Id.*)  Plaintiff told Defendant Mills

8   that he "was a coward and a follower and that he don't have any guts."  (*Id.* at 5-6.)  Plaintiff

9   returned to the front of the dining hall with Defendant Mills and inmate Garcia.  (*Id.* at 6.)

10  Defendant Barra was standing at the front of the dining hall when they arrived.  (*Id.* at 6.)

11  Defendant Mills again searched Plaintiff and grabbed and squeezed Plaintiff's testicles.  (*Id.* at 6.)

12  Plaintiff alleges that during his encounter with Defendant Mills he did not resist or threaten the

13  officer in any fashion or break any prison rules.  (*Id.* at 6.)  Plaintiff alleges he suffered swollen

14  testicles and testicular dysfunction as a result of Defendant Mills's excessive force.  (*Id.* at 6.)

15       After Defendant Mills searched Plaintiff and grabbed his testicles, Plaintiff said to Defendant

16  Barra, "your [sic] a punk bitch, why don't you do your own dirty work yourself."  (*Id.* at 7.)

17  Defendant Barra then searched Plaintiff and grabbed and squeezed Plaintiff's testicles.  (*Id.* at 7.)

18  Defendant Barra's search of Plaintiff did not reveal any contraband or weapons.  (*Id.* at 7.)  Plaintiff

19  alleges that Defendant Barra, in using excessive force during his search, caused a serious injury to

20  his testicles and infliction of pain.  (*Id.* at 7.)  Plaintiff alleges that during his encounter with

21  Defendant Barra he did not resist or threaten the officer in any fashion or break any prison rules.

22  (*Id.* at 8.)  Plaintiff clenched his fist because he was in so much pain.  (*Id.* at 7.)  Defendant Barra

23  then ordered Plaintiff to turn around and "cuff up."  (*Id.* at 7.)  Plaintiff complied, was placed in

24  handcuffs, and escorted to facility "B" medical clinic.  (*Id.* at 7.)

25       Upon arriving at the "B" yard medical clinic, Defendants placed Plaintiff in holding cell #1.

26  (*Id.* at 8.)  Defendant Barra instructed Plaintiff to walk to the back of the cage and face the wall,

27  which Plaintiff did.  (*Id.* at 8.)  Defendant Barra closed the door, locked it, stuck his hands into the

28  tray slot, and grabbed the handcuffs, causing Plaintiff to fall back against the door and injure his

1    wrist.  (*Id.* at 8.)  Defendant Barra pulled on the handcuffs again when Plaintiff tried to stand up,

2    causing Plaintiff to fall back into the door a second time.  (*Id.* at 8.)  Plaintiff alleges he suffered

3    swollen wrists as a result.  (*Id.* at 8.)

4                    Plaintiffs allegations against Defendants Barra, Mace, and Doe for denial of medical care

5                    Plaintiff alleges that Defendant Mace witnessed the assault by Defendant Barra on him in the

6    "B" yard clinic.  (*Id.* at 10.)  According to Plaintiff's SAC, Plaintiff also complained to Defendant

7    Mace about the sexual assault on him committed by Defendants Mills and Barra.  (*Id.* at 10.)

8    Defendant Barra interfered with Defendant Mace's job, causing Defendant Mace to not treat

9    Plaintiff's swollen testicles, swollen wrist, and substantial pain.  (*Id.* at 10.)  Plaintiff was denied and

10   delayed medical care for sixteen days.  (*Id.* at 10.)  Defendant Mace also allegedly fabricated

11   CDCR7219 in order to conceal Defendants Mills and Barra's actions.  (*Id.* at 10-11.)  Plaintiff was

12   placed in administrative segregation ("Ad-Seg") on August 12, 2010.  (*Id.* at 11.)

13          After being placed in administrative segregation on August 12, Plaintiff complained to Ad-

14   Seg medical staff "Jane Doe"[4] about the sexual assault by Defendants Mills and Barra and about

15   Defendant Barra's assault in the "B" yard clinic.  (*Id.* at 12.)  Defendant Doe ignored and failed to

16   respond to Plaintiff's medical complaints.  (*Id.* at 12.)  Plaintiff wrote a 602 grievance concerning

17   the sexual assault by Defendant Mills and Barra on August 12, 2010.  (*Id.* at 12.)  On August 13,

18   2010, Plaintiff wrote two sick call requests, seeking appointments for his wrist injury and the sexual

19   assault.  (*Id.* at 12.)  Plaintiff received treatment for his wrist injury.  (*Id.* at 12.)

20          Plaintiff alleges that from August 12 to August 27, 2010, he suffered pain as a result of a

21   delay in treatment of his swollen testicles.  (*Id.* at 12-13.)  Plaintiff suffered swelling causing him

22   to be unable to sleep, walk, close his legs, or urinate without pain.  (*Id.* at 13.)  On August 27, 2010,

23   Plaintiff was removed from Ad-Seg and placed in central medical before being taken to Pioneers

24   Memorial Healthcare District for the examination of his testicles.  (*Id.* at 13; Doc. No. 39-1, Ex. 1

25   at 19-21.)  Plaintiff was diagnosed with testicular swelling and dysfunction.  (SAC at 13; Doc. No.

26   39-1, Ex. 1 at 19-21.)

27

28          [4]Plaintiff alleges that he does not know "Jane Doe's" true name because she was not wearing a
     name tag.  (SAC at 12.)

<u>Plaintiff's allegations against Defendants White and Janda</u>

Following his encounter with Defendants Mills and Barra, Plaintiff wrote a 602 grievance stating that he was sexually assaulted by Mills and Barra and claiming that they were trying to cover up the assault by saying Plaintiff committed an assault and battery on a peace officer.  (*Id.* at 14.) On August 21, 2010, Plaintiff received a disciplinary charge for battery on a peace officer based on his encounter with Mills and Barra.  (*Id.* at 14.)  The rules violation report ("RVR") alleged that Plaintiff began clenching his fists after stating to Defendant Barra that he is "a punk bitch, why don't you do your own dirty work yourself." (Doc. No. 39-1, Ex. 2 at 28.)  Barra then ordered Plaintiff to cuff up and escorted Plaintiff to holding cell #1 in the "B" yard clinic.  (*Id.*)  Barra instructed Plaintiff to turn around in order to remove the handcuffs.  (*Id.*)  As Barra placed his handcuff key in the handcuffs to remove them, Plaintiff turned his body to the left and pulled Barra forward into the cell cuff port, causing Barra's forearms to strike the cuff port opening.  (*Id.*) When Barra attempted to remove the handcuff key, Plaintiff continued pulling Barra into the cuff port opening. (*Id.*)  Plaintiff and Barra were then evaluated by on duty medical staff, who documented the injuries Barra sustained as a result of Plaintiff's actions.  (*Id.*)

Plaintiff had his disciplinary hearing on September 8, 2010 before Defendant White.  (SAC at 15.)  Plaintiff requested that the disciplinary hearing officer call inmate Garcia, Defendant Mills, Defendant Barra, Correctional Officer Coronado, Lieutenant Sigler, Defendant Mace, and Registered Nurse Herrera as witnesses at the hearing.  (*Id.* at 14-15.)  Defendant White only called Defendant Barra as a witness and failed to call the other six witnesses Plaintiff requested.  (*Id.* at 15.)  Defendant White stated that he was not going to call the other witnesses because they would not provide any new or relevant information for the hearing.  (*Id.* at 15.)  Following the hearing, Plaintiff received a written disposition finding him guilty as charged based on a preponderance of the evidence submitted at the hearing.  (*Id.* at 15.)  The written disposition noted the evidence included employees' written reports and photographs taken of cell #1 in the "B" yard clinic.  (*Id.* at 15.)  As a result of his being found guilty of a Division "D" offense, Plaintiff was originally assessed ninety (90) days forfeiture of credit.  (Doc. No. 39-5 at 9.)  After the hearing officer's finding and disposition was re-reviewed by a Chief Disciplinary Officer ("CDO") on September 24,

1  2010, the CDO disallowed all credit loss initially assessed and reclassified the offense as a Division

2  "B" offense.  (Doc. No. 49, Ex. 7 at 47; Ex. 8 at 53-55.)

3       Plaintiff filed an administrative appeal with Defendant Janda complaining that only one of

4  Plaintiff's witnesses was called by Defendant White.  (SAC at 16; *see* Doc. No. 39-5 at 1-3.)

5  Defendant Janda denied Plaintiff's appeal.  (SAC at 16.)

6      <u>Defendants Mills, Barra, White and Janda's motion to dismiss</u>

7       Defendants brought an non-enumerated Fed.R.Civ. P. 12(b) and a Fed.R.Civ.P. 12(b)(6)

8  motion to dismiss Plaintiff's SAC.  (Doc. No. 43.)  In their motion, Defendants seek dismissal of

9  Plaintiff's claim of excessive force against Defendants Mills and Barra and Plaintiff's claim of

10  denial of medical care against Defendant Barra, arguing Plaintiff failed to exhaust administrative

11  remedies on these claims.  (Doc. No. 43-1 at 1-2.)  Defendants also seek dismissal Plaintiff's claim

12  of denial of due process against Defendants White and Janda for failure to state a claim.  (*Id.* at 2.)

13  **Discussion**

14  **I.  Failure to Exhaust Administrative Remedies**

15      A.  <u>Legal Standards for Motion to Dismiss for Failure to Exhaust Administrative Remedies</u>

16  <u>under Fed.R.Civ.P. 12(b)</u>

17       The Prison Litigation Reform Act of 1995 provides that:

18      [n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

19      correctional facility until such administrative remedies as are available are exhausted.

20  42 U.S.C. §1997e(a).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality

21  of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). However, the prisoner is not required

22  to specially plead or demonstrate exhaustion in his or her complaint because failure to exhaust is an

23  affirmative defense under the PRLA. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

24       The proper vehicle for challenging a complaint based on failure to exhaust administrative

25  remedies is an unenumerated motion under Rule 12(b) of the Federal Rules of Civil Procedure.

26  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Unlike under Rule 12(b)(6), "[i]n deciding

27  a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the

28  pleadings and decide disputed issues of fact." *Id.* at 1119-20.  If the district court concludes that the

1   prisoner has failed to exhaust his or her administrative remedies, the claim should be dismissed
2   without prejudice. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059, 1063 (9th Cir. 2007);
3   *Wyatt*, 315 F.3d at 1120.

4       Failure to exhaust may not be waived. *See Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006)
5   ("[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"). The United
6   States Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the
7   PRLA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  A prisoner
8   also cannot satisfy the PRLA's exhaustion requirement by "filing an untimely or otherwise
9   procedurally defective administrative grievance or appeal." *Woodford*, 584 U.S. at 83-84.  Nor can
10  a prisoner who did not make any attempt to utilize the prison grievance system sidestep the
11  exhaustion requirement by arguing that it now would be futile to attempt to exhaust within the
12  prison system. *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2002) ("we stress the point . . . that we will
13  not read futility or other exceptions into statutory exhaustion requirements where Congress has
14  provided otherwise"); *see also Woodford*, 584 U.S. at 100 ("if the party never pursues all available
15  avenues of administrative review, the person will never be able to sue in federal court").

16      As noted by the U.S. Supreme Court in *Woodford*, California has a "relatively simple"
17  grievance process for prisoners who seek to challenge the conditions of confinement. 584 U.S. at
18  85. Under the regulations in place at the time Plaintiff filed his 602 form in 2010[5], to exhaust this
19  process a prisoner had to proceed through several levels of appeal: (1) informal resolution[6]; (2)
20  formal written appeal on a CDC 602 inmate appeal form (hereinafter "Form 602") at the first level

---

23      [5] The California Department of Corrections and Rehabilitation inmate formal administrative appeals
24  process underwent a major revision in 2011, including the discontinuation of the informal appeal process. *See*
    2011 CA REG TEXT 248824 (NS).
25

26      [6] Under California Code of Regulations Title 15, § 3084.5(a)(3), the informal level of appeal was
    bypassed for appeals of (1) classification committee actions; (2) serious disciplinary infractions; (3) classification
27  staff representative actions; (4) departmental regulations, policies, or operational procedures; (5) exceptional
    circumstances defined in section 3084.7; (6) any action which the appeals coordinator determines cannot be
28  resolved informally; (7) alleged misconduct by a departmental peace officer; or (8) the denial of disabled inmate
    or parolee requests for reasonable modification or accommodation filed on CDC Form 1824 (1/95), Reasonable
    Modification Or Accommodation Request, pursuant to section 3085.

10cv2642-AJB

1   of appeal[7]; (3) second level of appeal to the institution head or designee[8]; and (4) third level appeal

2   to the Director of the California Department of Corrections and Rehabilitation (hereinafter the

3   "Director). Cal. Code Regs. tit. 15, § 3084.5; *Woodford*, 584 U.S. at 85-86; *Wyatt v. Terhune*, 315

4   F.3d 1108, 1119 (9th Cir. 2003). A final decision from the Director's level of review generally

5   satisfies the exhaustion requirement under §1997e(a). *See Booth*, 532 U.S. at 739-41.

6        When Plaintiff submitted his 602 form in 2010, the prisoner had to submit the appeal within

7   fifteen working days from the date of the event or decision being appealed, or submit it to the next

8   level of review within fifteen working days of receiving an unacceptable lower level appeal

9   decision. Cal. Code Regs. tit. 15, § 3084.6(c).[9] Failure to timely submit an appeal could be grounds

10  for rejection if the inmate had the opportunity to submit the appeal within the prescribed time. Cal.

11  Code Regs. tit. 15, §3084.3(c)(6).  Additionally, an appeal alleging misconduct by a departmental

12  peace officer was to be accompanied by a Rights and Responsibilities Statement. Cal. Code Regs.

13  tit. 15, § 3084.1(e).[10] Failure to submit the form was cause for rejecting the appeal. *Id.* An inmate's

14  refusal to be interviewed or cooperate with the reviewer would result in the cancellation of his

15  appeal.  Cal. Code Regs. tit. 15, §3084.4(d); (Doc. No. 43-4, Nava Decl., Ex. 1 at 3).

16      B.  Defendants' Evidence Regarding Plaintiff's Administrative Appeals

17        On August 12, 2010, Plaintiff filled out a Form 602 alleging that Defendants Mills and Barra

18

19

20

21

22   [7] The appeals coordinator could elect to bypass an appeal at the First Formal level and submit it directly
     to the Second Formal Level for (1) a policy or procedure implemented by the institution head; (2) a policy,
23   procedure or regulation implemented by the department; (3) an issue which cannot be resolved at the division
     head's level; e.g., appeal of a regular transfer; (4) serious disciplinary infractions.  Cal. Code Regs tit. 15,
24   §3084.5(b).

25   [8] Only matters involving involuntary transfers to the California Medical Facility or Atascadero State
     Hospital bypassed the Second Formal Level and were submitted directly to the Third Formal Level.  Cal. Code
26   Regs. tit. 15, §§ 3084.5 (c); 3084.7(d)(4)(B).

27   [9]California Code of Regulations Title 15, §3084.8(b) now provides the time limits for submitting an
     appeal.  Inmates now must submit the appeal within 30 calendar days of the event or decision being appealed.

28   [10]California Code of Regulations Title 15, §3084.1(e) was amended in 2011, deleting the requirement of a
     Rights and Responsibility Statement.

10cv2642-AJB

sexually assaulted him.  (Doc. No. 43-4, Nava Decl., Ex. 2 at 7.[11])  Plaintiff also alleged that Defendant Barra was trying to cover up the assault by accusing Plaintiff of assaulting Defendant Barra.  (*Id.*)  The appeal was received by the Appeals Coordinator at Calipatria on August 26, 2010.  (*Id.*)  The appeal was given Log Number CAL-A-10-1870.  (*Id.*)  The informal level of review was bypassed.  (*Id.*)  Plaintiff did not submit a Rights and Responsibilities statement with his appeal.

On October 1, 2010, Plaintiff received a written decision at the first formal level of review on appeal Log Number CAL-A-10-1870.  (Doc. No. 43-4, Nava Decl., Ex. 4 at 9.)  The written decision  was signed by Defendant G.J. Janda, Associate Warden, on September 29, 2010.  (*Id.*)  The decision noted that Plaintiff was interviewed on September 21, 2010 by Correctional Lieutenant M.D. Carpio and that Plaintiff refused to cooperate with the interview or sign his Rights and Responsibilities form.  (*Id.*)  The Rights and Responsibilities form submitted with appeal Log Number CAL-A-10-1870 is signed by Carpio as the receiving staff on September 23, 2010 and notes that Plaintiff, the inmate, refused to sign the form on September 23, 2010.  (Doc. No. 43-4, Nava Decl., Ex. 3 at 8.)  Carpio avers that he provided Plaintiff with a Rights and Responsibilities statement on September 23, 2010, informed Plaintiff he was required to sign it in order to pursue his appeal, and gave him the opportunity to sign it.  (Doc. No. 43-3, Carpio Decl. ¶2.)  Plaintiff did not sign the statement and Carpio did not tell Plaintiff that it was acceptable to submit the statement at a later date with other documents.  (*Id.*)  Carpio noted that Plaintiff refused to sign the statement and submitted it to his supervisor for processing.  (*Id.*)  Plaintiff later signed the Rights and Responsibilities form on October 5, 2010.  (Doc. No. 43-4, Nava Decl., Ex. 3 at 8.) Per Cal. Code Regs. tit. 15, §3084.1(c), Plaintiff's appeal was rejected in the written decision.  (Doc. No. 43-4, Nava Decl., Ex. 4 at 9.)  The decision also noted that a confidential inquiry had been conducted, where Correctional Lieutenant R. Nelson, Defendant Barra, and Defendant Mills were questioned.  (*Id.*)  The decision found that staff did not violate CDCR policy with respect to some of the issues raised and that the inquiry was complete.  (*Id.*)

---

[11]Defendants submitted the declaration of P. Nava, Correctional Counselor-I/Appeals Coordinator (Acting), at Calipatria State Prison.  (Doc. No. 43-4.)  Nava declares that he searched the Appeals Office's records for inmate grievances filed by Plaintiff.  (*Id.*)  Attached to his declaration are the appeal documents found through that search.  (*Id.*)

On October 5, 2010, Plaintiff requested a second-level review of his appeal number CAL-A-10-1870. (Doc. No. 43-4, Nava Decl., Ex. 5 at 10.)  In explaining his reasons for being dissatisfied with the rejection of his appeal at the first level, Plaintiff wrote, "Like I told the A/W I wrote a statement and had a document I wanted to attached[sic].  But if your[sic] want to play game.  I'll write the internal affairs." (*Id.*)  Plaintiff's request for a second-level review was received by the Appeals Coordinator at Calipatria on October 19, 2010. (*Id.*)

On October 26, 2010, Plaintiff's second-level appeal was screened out in a written notice returning his second-level appeal documents. (Doc. No. 43-4, Nava Decl., Ex. 6 at 11.) The written notice states that Plaintiff's second-level appeal is being returned to him because the "appeal constitutes an abuse of the appeal process pursuant to CCR 3084.4.  Refusal to interview or cooperate with reviewer shall result in cancellation of the appeal per CCR 3084.4(d)." (*Id.*)  The notice further explains that his first level appeal "was rejected on [September 29, 2010] as [Plaintiff] refused to cooperate with the appeal process by refusing to sign the Rights and Responsibilities statement." (*Id.*)  The notice also informs Plaintiff that a cancelled appeal may not be resubmitted, but that a separate appeal can be filed on the cancellation decision. (*Id.*)  The original appeal may only be resubmitted if the appeal on the cancellation decision is granted. (*Id.*)

On November 6, 2010, Plaintiff filled out another Form 602 regarding medical care, alleging that Defendant Barra interfered with Defendant Mace's job on August 12, 2010 when Plaintiff complained to Mace about the sexual assault by Defendants Barra and Mills. (Doc. No. 43-4, Nava Decl., Ex. 7 at 12.)  Plaintiff also alleged that Defendant Mace witnessed the assault in the "B" yard clinic and that Mace fabricated CDCR 7219 to conceal the Defendants' actions. (*Id.*)  In his appeal, Plaintiff requested Defendants Mace, Barra, and Jane Doe be held liable for the physical and emotional injury resulting from their failure to provide adequate medical care. (*Id.*)  On his Form 602, Plaintiff explained that he was waiting on all of the 115 hearing documents concerning battery on staff, which he received on September 20, 2010. (*Id.*)  Plaintiff also wrote that there was an investigation occurring at the same time related to his appeal Log Number CAL-A-10-1870 and that he was waiting until the investigation was over in order to support his medical care appeal. (*Id.*; *see also* Doc. NO. 49, Ex. 2 at 67.) The appeal was not given a Log Number.

1      On November 18, 2010, Plaintiff's first level appeal of the medical care he received was

2   screened out by the Calipatria Appeals Coordinator in a written notice.  (Doc. No. 43-4, Nava Decl.,

3   Ex. 8 at 13.)  Plaintiff's appeal was returned to him because "there [was] too great a time lapse

4   between when the action or decision occurred and when [Plaintiff] filed [his] appeal with no

5   explanation of why you did not or could not file in a timely fashion."  (*Id.*)  The notice instructed

6   Plaintiff to submit an explanation and supporting documentation explaining why he did not or could

7   not file his appeal timely in order to further pursue his appeal.  (*Id.*)  Plaintiff was to do so within

8   fifteen working days.  (*Id.*)

9      On December 10, 2010, Plaintiff filed a petition for writ of habeas corpus, case no. S188946,

10   in the California Supreme Court regarding his rejected appeal seeking damages for denial of medical

11   care.  (Doc. No. 39-5, Ex. 4 at 24-29.)  On January 19, 2011, his petition was denied.  (*Id.* at 25.)

12      On January 24, 2011, Plaintiff filed another petition for writ of habeas corpus, case no.

13   S190030, in the California Supreme Court regarding his rejected appeal seeking damages for sexual

14   assault and misuse of force by prison personnel.  (Doc. No. 39-5, Ex. 4 at 30-35.)  On June 29, 2011,

15   his second petition was denied.[12]

16      C.  Plaintiff's Evidence of Exhaustion

17      In his response in opposition to Defendants' motion to dismiss, Plaintiff attaches many

18   documents[13], including his appeal of the cancellation of his appeal Log Number CAL-A-10-1870.

19   (*See* Doc. No. 49 at 123-24.)    On October 28, 2010, Plaintiff filled out a Form 602 regarding the

20   cancellation of appeal Log Number CAL-A-10-1870, alleging that he did not refuse to interview or

21   cooperate with the reviewer.  (*Id.* at 123.)  Plaintiff alleged that he told the reviewer that he was not

22   finished with his statement and wanted to attach all of the supporting documentation from RVR Log

23

24      [12]A records search of the case number of Plaintiff's second habeas petition on the California Supreme
     Court's website reveals that his petition was denied on June 29, 2011.

25

26      [13]Plaintiff attaches over 100 pages of exhibits to his response in opposition.  (*See* Doc. No. 49.)  Many of
     the documents are documents also attached to Plaintiff's SAC and Defendants' motion to dismiss.  Plaintiff also
     attaches the written decision on his 602 appeal of the RVR finding him guilty of battery on a peace officer.  (See
27   Doc. No. 49 at 53-55.)  Because Defendants do not raise exhaustion regarding Plaintiff's appeal of the RVR, the
     Court will not discuss the history of the appeal.  Plaintiff also attaches a Government Claims Form and decision
28   from the California Victim Compensation and Government Claims Board.  (Doc. No. 49 at 85-86.)  Because
     Plaintiff has not alleged a state law tort claim in his SAC, the Court will not address these documents.

10cv2642-AJB

Number 08-10-B30.  (*Id.* at 123.)  Plaintiff also argued that it did not make sense for him to sign the Rights and Responsibilities statement if he did not have his statement finished or the supporting documentation to support his allegations.  (*Id.* at 123.)  The appeal was given Log Number CAL-A-10-02372.  (*Id.* at 123.)

On January 14, 2011, Plaintiff's appeal of the cancellation of appeal Log Number CAL-A-10-1870 was denied at the first level of review with an attached written response dated January 12, 2011.  (Doc. No. 49 at 124-26.)  The written response notes that P. Alaniz, Correctional Counselor II, interviewed Plaintiff regarding his appeal on December 29, 2010.  (*Id.* at 125.)  In his written response, Alaniz finds that Plaintiff confirmed that he refused to sign the Rights and Responsibilities statement when Plaintiff wrote in his appeal that it did not make sense to sign the Rights and Responsibilities statement when his statement was not finished and did not have the supporting documentation.  (*Id.* at 125.)  After reviewing the processing of Plaintiff's appeal Log Number CAL-A-10-1870, the decision found no reason to alter the original decision to cancel appeal Log Number CAL-A-10-1870.  (*Id.* at 125-26.)  The written response informed Plaintiff that he may submit the issue for a second level of review if desired.  (*Id.* at 126.)

On January 18, 2011, Plaintiff filled out section "H" of the appeal form, which section is provided for an inmate to request a Director's Level review after completing the second level of review.  (Doc. No. 49 at 124.)  In section "H" Plaintiff explained why he was dissatisfied with the denial of his appeal at the first level by reviewer Alaniz.  (*Id.*)  On February 4, 2011, Plaintiff's appeal of the first level denial was rejected and returned to Plaintiff because it was incomplete.  (*Id.* at 127.)  The written rejection explained that Plaintiff completed section "H" in error and requested Plaintiff to complete section "F" on a new form and resubmit the entire package back to the appeals office.  (*Id.* at 127.)  Section "F" allows an inmate to request a second level review and explain his dissatisfaction with the first level response.  (*Id.* at 124.)

On April 12, 2011, Plaintiff's appeal Log Number CAL-A-10-02372 was cancelled for submitting the appeal outside the time limits pursuant to Cal. Code Regs. tit. 15, §3084.6(c)(4).  (Doc. No. 49 at 128.)  The written cancellation states that Plaintiff's appeal was returned to him on February 4, 2011 and that Plaintiff did not respond until April 12, 2011.  (*Id.*)  The cancellation finds

1   that even using the new 30 day rule for submitting appeals[14], Plaintiff was out of time constraints.[15]

2   (*Id.*)

3          D.   Analysis of Exhaustion of Administrative Remedies

4          *1.  Sexual Assault and Excessive Force by Defendants Mills and Barra*

5          After a thorough review of all the documents submitted, the Court finds Plaintiff failed to

6   exhaust his administrative remedies with respect to his claim against Defendants Mills and Barra

7   for sexual assault and excessive force in violation of the his Eighth Amendment Rights.  Although

8   Plaintiff filed a timely Form 602 regarding his allegations that Mills and Barra used excessive force

9   by squeezing his testicles, Plaintiff failed to submit the required Rights and Responsibilities

10  statement with his appeal on August 12, 2010.  Plaintiff's argument that he was waiting to finish his

11  statement and receive documents before signing the Rights and Responsibilities statement is

12  unpersuasive, as the provision regarding the requirement of a Rights and Responsibilities statement

13  did not permit a prisoner to delay signing one while waiting for supporting documentation. Cal.

14  Code Regs. tit. 15, § 3084.1(e). A Rights and Responsibilities statement was procedurally required

15  when making a claim against a peace officer and was to accompany the appeal.  *Id.* When given an

16  opportunity by Correctional Lieutenant Carpio to sign the Rights and Responsibilities statement

17  before the appeal was decided, Plaintiff refused to sign it.  Plaintiff does not dispute that he refused

18  to sign the statement when presented to him on September 23, 2010.  The rejection and cancellation

19  of Plaintiff's appeal was not improper because it was procedurally defective when reviewed and

20  Plaintiff refused to cooperate with the interviewer by signing the required form.  A prisoner cannot

21  satisfy the exhaustion requirement by filing a procedurally defective administrative appeal.

22  *Woodford*, 548 U.S. at 83-84.  Plaintiff had the opportunity to comply with the requirement of a

23  signed Rights and Responsibilities statement, but choose not to and submitted a signed statement

24

25          [14]The time limit for submitting an appeal operative as of January 28, 2011 is "within 30 calendar days of:
    (1) the occurrence of the event or decision being appealed, or; (2) upon first having knowledge of the action or

26  decision being appealed, or; (3) upon receiving an unsatisfactory departmental response to an appeal filed."  Cal.
    Code. Regs. tit. 15, §3084.8(b).

27          [15]The Court has reviewed Plaintiff's other submissions in support of his opposition.  (*See* Doc. Nos. 77,

28  81, 83, 85, & 96.)  None of these submissions contain additional evidence of administrative exhaustion of the
    claims in his SAC.  Most of the documents submitted are duplicates of documents attached to the SAC,
    Defendants' motion to dismiss, and Plaintiff's response in opposition.

1   only after his appeal was rejected.  Plaintiff's appeal never made it past the first level of review and

2   therefore, there is no final decision from the Director's level of review.

3        Plaintiff's argument that his appeal of the cancellation of his first appeal, Log Number CAL-

4   A-10-02372, exhausted his administrative remedies with respect to the alleged sexual assault is also

5   unpersuasive.[16]  (*See* Doc. No. 49 at 28-32.)   Plaintiff's appeal of the cancellation of appeal Log

6   Number CAL-A-10-1870 was denied at the first level of review and then cancelled when Plaintiff

7   failed to timely submit a proper appeal of the first level denial.[17]  There is no final decision from the

8   Director's level of review on Plaintiff's appeal Log Number CAL-A-10-02372 regarding the

9   cancellation of appeal Log Number CAL-A-10-1870.  Therefore, Plaintiff did not exhaust his

10  administrative remedies as to his appeal of the cancellation of the appeal.  Furthermore, because

11  Plaintiff's appeal of the cancellation of his appeal Log Number CAL-A-10-1870 was not granted,

12  Plaintiff could not resubmit his appeal of the alleged assault in order to properly exhaust

13  administrative remedies. (*See* Doc. No. 43-4, Nava Decl., Ex. 6 at 11.)

14       Plaintiff also argues that he exhausted his administrative remedies because the decision at

15  the first level of review on appeal Log Number CAL-A-10-1870 reached the merits of his appeal

16  and found that staff did not violate CDCR policy with respect to one or more of the issues raised.

17  (Doc. No. 49 at 27, 32.)   The Court disagrees as there is no third level Director's decision on

18  Plaintiff's grievance of excessive force.  Plaintiff's appeal was screened out at the second level of

19  review because it had been rejected and cancelled at the first level of review.  The fact that the first

20  level decision rejecting the appeal checked the box finding staff did not violate CDCR policy as to

21  one or more of the issues raised, does not exhaust Plaintiff's administrative remedies.   The

22  unreported cases Plaintiff cites do not support a finding of exhaustion in this case. *See Richardson*

23

24       [16]In several documents, Plaintiff requests copies of his appeal Log Number CAL-A-10-02372 and states
     that these documents are missing.  However, Plaintiff has attached copies of that appeal and its rejection with his
25   response in opposition.  (Doc. No. 49 at 123-28.)

26       [17]Plaintiff also argues in his opposition that there is a one year time limit for appeals by non-inmates
     alleging employee misconduct and his friends and family filed allegations of employee misconduct on his behalf
27   with the warden office at Calipatria pursuant to Cal. Code. Regs. tit. 15, §3391(b).  (Doc. No. 49 at 29.)  Plaintiff
     has not provided any documents supporting this argument.  Furthermore, §3391 is expressly limited to non-
28   inmates and does not apply to Plaintiff's appeal, as he was incarcerated during the events giving rise to his
     complaint.

1   *v. Sullivan*, 2005 WL 2465936 (E.D. Cal. 2005) (finding exhaustion where inmate's appeal was

2   cancelled at second level of review in a decision that also noted it failed on the merits and inmate

3   submitted the cancellation to the third level of review)[18]; *Gregory v. Ayers*, 2006 WL 548444 (E.D.

4   Cal. 2006) (finding exhaustion where inmate received a Director's Level decision on a later

5   grievance that had subsumed within it findings concerning an initial grievance).   Plaintiff did not

6   receive a Director's Level decision on either appeal concerning his claim of sexual assault and

7   excessive force, nor did the rejection of his second appeal regarding the cancellation of his first

8   appeal address the merits of his claim.

9       Plaintiff also asserts that he did not have to exhaust administrative remedies on his excessive

10  force appeal because he seeks monetary damages.  (Doc. No. 49 at 31-33.)  The Supreme Court in

11  *Booth* expressly held that a prisoner must exhaust administrative remedies even where the relief

12  sought, including monetary damages, cannot be granted by the administrative process.  *Booth*, 532

13  U.S. at 734.  Therefore, Plaintiff's argument on this point fails.

14      Because the Court finds Plaintiff failed to properly exhaust his administrative remedies as

15  to his first cause of action against Defendants Mills and Barra for sexual assault and excessive force

16  in violation of his Eighth Amendment rights, the Court recommends that Defendants' motion to

17  dismiss be **GRANTED** and this claim be **DISMISSED WITHOUT PREJUDICE**. Additionally,

18  because the Court finds that amendment of Plaintiff's claim against Defendants Mills and Barra for

19  excessive force in violation of his Eighth Amendment rights would be futile given his failure to

20  exhaust, the Court recommends denying leave to amend as to this claim.  *See James v. Giles*, 221

21  F.3d 1074, 1077 (9th Cir.2000).

22      *2.  Denial of Medical Care by Defendant Barra*

23      The Court finds Plaintiff failed to exhaust his administrative remedies with respect to his

24  claim against Defendant Barra for denial of medical care in violation of his Eighth Amendment

25  rights.  Plaintiff alleges that he was denied medical care for his complaints of swollen testicles from

26

27          [18]The Court notes that the court in *Richardson* relied on the Ninth Circuit's decision in *Ngo v. Woodford*,
    403 F.3d 620, 631 (9th Cir. 2005) in finding exhaustion.  The Supreme Court overturned *Ngo*, finding that the
28  PLRA's exhaustion requirement is not satisfied by a procedurally defective administrative appeal.  *Woodford*, 548
    U.S. 83-84, 103.

10cv2642-AJB

August 12, 2010 to August 27, 2010.  (SAC at 10, 12.)  Plaintiff filed his Form 602 regarding denial of medical care on November 6, 2010.  (Doc. No. 43-4, Nava Decl., Ex. 7 at 12.).  Pursuant to Cal. Code Regs. tit. 15, § 3084.6(c), Plaintiff had fifteen working days to submit his appeal.  His appeal was properly rejected for being untimely at the first level of review, as November 6, 2010 was more than 15 working days after the event occurred, even if using August 27, 2010 as the date of the event.  The rejection of his appeal instructed Plaintiff to submit an explanation and supporting documentation explaining why he did not or could not file his appeal timely.  (Doc. No. 43-4, Nava Decl., Ex. 8 at 13.)  There is no evidence that Plaintiff submitted an explanation with documentation following the rejection or that he pursued his appeal further in the administrative grievance system.  Therefore, there is no final decision at the Director's level.  Plaintiff's argument that he exhausted his administrative remedies because the appeal was rejected as untimely and he therefore has no further administrative remedies fails.  (*See* Doc. No. 49 at 4-5, 7.)    A prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective administrative appeal.  *Woodford*, 548 U.S. at 83-84.

Plaintiff argues that his appeal was timely because he mentioned medical treatment in a statement he submitted in connection with the RVR and asserts that a rule provided that a grievance raising "any issue related to the conduct report must await completion of the disciplinary process." (Doc. No. 49 at 6.)  Plaintiff has not cited the rule on which he relies or explained how medical treatment tangentially related to an RVR for battery on a peace office is included within this rule.  Additionally, the statement Plaintiff submitted in connection with the RVR does not allege that Defendants Barra, Mace and Jane Doe denied him medical care.  (*See* Doc. No. 39-2 at 5-6.) Rather, Plaintiff related his claim of sexual assault and excessive force by Mills and Barra and that their actions caused his testicles to be swollen and painful from August 12, 2010 to August 27, 2010. (*Id.*)  Nowhere in his statement does he mention he was denied medical treatment nor that any particular staff member delayed his medical care.  (*Id.*)

Plaintiff's argument that he had to wait for completion of the disciplinary process is similar to his statement in his appeal that he was waiting for his 115 hearing documents (RVR documents) and an ISU investigation relating to appeal Log Number CAL-A-10-1870 before filing his appeal

1   on medical care.   (Doc. No. 43-4, Nava Decl., Ex. 7 at 12.)  Plaintiff provides no citation to a rule

2   allowing an inmate to delay filing an appeal while awaiting supporting documentation, let alone

3   marginally related documentation.  Plaintiff timely filed his Form 602 regarding the alleged sexual

4   assault without the RVR documents, which arguably relate more to his claim of sexual assault than

5   to his claim of delay in medical care.  Furthermore, even if waiting for these documents was reason

6   to delay filing his appeal on medical care, Plaintiff received the RVR decision on September 20,

7   2010 and the rejection of his appeal Log Number CAL-A-10-1870 on October 1, 2010, both more

8   than fifteen working days before November 6, 2010.  (*See id.*; *id.*, Ex. 5 at 10.)  Plaintiff failed to

9   explain on his appeal what prevented him from filing his appeal once he received these documents

10  and offers no explanation in his opposition.

11      Plaintiff also argues that he need not exhaust administrative remedies as to his medical care

12  claim because he only seeks monetary damages, which are normally not available through the prison

13  administrative appeal process.  (Doc. No. 49 at 5.)  As discussed above, the Supreme Court in *Booth*

14  expressly held that a prisoner must exhaust administrative remedies even where the relief sought,

15  including monetary damages, cannot be granted by the administrative process.  *Booth*, 532 U.S. at

16  734.  Therefore, Plaintiff's argument on this point fails.

17      Because the Court finds Plaintiff failed to properly exhaust his administrative remedies as

18  to his second cause of action against Defendant Barra for denial of medical care in violation of his

19  Eighth Amendment Rights, the Court recommends that Defendants' motion to dismiss be

20  **GRANTED** and this claim be **DISMISSED WITHOUT PREJUDICE**.  Additionally, because the

21  Court finds that amendment of Plaintiff's claim against Defendant Barra for denial of medical care

22  violation of his Eighth Amendment rights would be futile given his failure to exhaust, the Court

23  recommends denying leave to amend as to this claim.  *See James*, 221 F.3d at 1077. As Plaintiff's

24  claims against Defendants Mace and Jane Doe involve the same exhaustion analysis, the Court

25  recommends Plaintiff's claims against Defendants Mace and Jane Doe be **DISMISSED WITHOUT**

26  **PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

27  / / /

28

10cv2642-AJB

**II. Failure to State a Claim**

    A. Legal Standards

       *1. Rule 8 and Rule 12(b)(6) Standards*

       The plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

       A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

       "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper without converting the motion to one for summary judgment." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n. 2 (9th Cir.1980)). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading...." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313–14 (9th Cir.1996). "Such consideration does not convert the motion to dismiss into a motion for summary judgment." *Id.* (quotation omitted). Here, Plaintiff has attached various exhibits to his SAC and the Court will consider these exhibits in deciding the instant motion. Additionally, Plaintiff's SAC contains

1  allegations relying on and referring to the contents of exhibits submitted with Defendants' motion

2  and Plaintiff's opposition and supplemental documents.  The Court will also consider these exhibits

3  in deciding the instant motion, as no party has questioned their authenticity.[19]

4        *2.  Standards Applicable to Pro Se Litigants*

5        Factual allegations asserted by pro se plaintiffs, "however inartfully pleaded," are held "to

6  less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519,

7  520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard still

8  applies to pro se pleadings post-*Twombly*).  Thus, where a plaintiff appears pro se in a civil rights

9  case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt.

10  *Hebbe v. Pliler,* 627 F.3d 338, 342 (9 th Cir. 2010) (citations omitted).  In giving liberal

11  interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims

12  that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th

13  Cir.1982).  "Vague and conclusory allegations of official participation in civil rights violations are

14  not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733

15  F.2d 646, 649 (9th Cir.1984) (finding conclusory allegations unsupported by facts insufficient to

16  state a claim under §1983).  "The plaintiff must allege with at least some degree of particularity overt

17  acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal

18  quotation omitted).

19        Nevertheless, the Court must give a pro se litigant leave to amend his complaint "unless it

20  determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*

21  *Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809

22  F.2d 1446, 1447 (9th Cir.1987)).  Thus, before a pro se civil rights complaint may be dismissed, the

23  court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi v.*

24  *Los Angeles Police Dep't*, 839 F.2d 621, 623–24 (9th Cir. 1988).  But where amendment of a pro se

25  litigant's complaint would be futile, denial of leave to amend is appropriate. *See James*, 221 F.3d

26

27      [19]Given the status of this case and that, as discussed above, no matters outside the pleadings have been

28  presented to the Court for a determination of Defendants' 12(b)(6) motion, the Court denies Plaintiff's request
(*see* Doc. Nos. 85 & 96) to convert Defendants' motion to dismiss into a motion for summary judgment.  *See*
Fed.R.Civ. P. 12(d).

10cv2642-AJB

1    at 1077.

2         *3.  Stating a Claim under 42 U.S.C. §1983*

3         To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

4    Constitution and laws of the United States, and must show that the alleged deprivation was

5    committed by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)

6    (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg*

7    *Bros., Inc. v. Brooks,* 436 U.S. 149 (1978).

8         B.  Analysis of Plaintiff's Claims

9         *1.  Plaintiff's Claim against Defendant White*

10        Plaintiff alleges in his SAC that Defendant White violated his Fourteenth Amendment right

11   to procedural due process by failing to call six witnesses Plaintiff requested at his RVR hearing.

12   (SAC at 14-15.)  Because prison disciplinary proceedings are not part of a criminal prosecution, a

13   prisoner is not afforded the full panoply of rights in such proceedings. *Wolff v. McDonnell*, 418 U.S.

14   539, 556 (1974). Thus, a prisoner's due process rights are moderated by the "legitimate institutional

15   needs" of a prison. *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir.1989), citing *Superintendent,*

16   *etc. v. Hill*, 472 U.S. 445, 454–455 (1984).  "Where a prison disciplinary proceeding *may* result in

17   the loss of good time credits," due process requires that the prisoner receive: (1) advance written

18   notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with

19   institutional safety and correctional goals, to call witnesses and present documentary evidence in

20   his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons

21   for the disciplinary action. *Hill*, 472 U.S. at 454 (emphasis added); *Wolff*, 418 U.S. at 563–567.

22        Defendants move to dismiss Plaintiff's claim against Defendant White because Plaintiff was

23   not ultimately assessed any good time credits.  (Doc. No. 43-1 at 13-14.)  The Court is unpersuaded

24   by this argument and finds Plaintiff sufficiently alleges a claim against Defendant White.[20]

25

26        [20]The Court also notes that the institution afforded Plaintiff all other due process requirements when a
     proceeding may result in the loss of credits.  Plaintiff received advance written notice of at least 24 hours of the
27   charge; Plaintiff requested and was permitted to present documentary evidence, including photographs of Barra's
     injuries and Plaintiff's handwritten statement; and Plaintiff received a written statement by the fact-finder of the
28   evidence relied upon and reasons for the disciplinary action.  (Doc. No. 39-1 at 23-25; Doc. No. 39-2 at 5-6; Doc.
     No. 39-3 at 1-5; Doc. No. 39-4 at 1-5; Doc. No. 39-5 at 16-20.)  Therefore, it does not appear the institution was

1  Plaintiff's alleges, supported by the exhibits attached to the SAC, that he requested seven witnesses

2  to be called at his RVR hearing and Defendant White only allowed Barra to be questioned as the

3  reporting employee. (SAC at 14-15; Doc. No. 39-1 at 24.) Following the hearing, Plaintiff was

4  found guilty of battery on a peace officer and initially assessed 90 days forfeiture of time credits.

5  (Doc. No. 39-5 at 15, 20.) After his disciplinary hearing and after receiving the written decision on

6  September 20, 2010, the CDO re-reviewed the findings on September 24, 2010 and changed the

7  assessment to 0 days forfeiture of time credits. (Doc. No. 49, Ex. 7 at 47; Ex. 8 at 53-55.) "*Hill*

8  mandates that the process due for any disciplinary conviction for which a potential penalty was loss

9  of time credits should focus upon the potential penalties that an inmate faces at a disciplinary

10 hearing, rather than on the ultimate penalty imposed." *Allen v. Swarthout*, 2011 WL 6046444 (E.D.

11 Cal., Dec. 5, 2011). Therefore, Plaintiff's due process claim does not fail simply because he was

12 eventually assessed no loss of time credits.[21] Defendants do not argue that the disciplinary charge

13 brought against Plaintiff for battery on a peace officer could not have resulted in loss of credits as

14 a penalty upon conviction.[22] Accordingly, the Court recommends Defendants' motion to dismiss

15 Plaintiff's claim against Defendant White for denial of due process in violation of his Fourteenth

16 Amendment rights be **DENIED**.

17     *2. Plaintiff's Claim against Defendant Janda*

18     Plaintiff alleges in his SAC that Defendant Janda violated his Fourteenth Amendment due

19 process rights by denying Plaintiff's administrative appeal regarding Defendant White's refusal to

20 call six of Plaintiff's witnesses at his disciplinary hearing. (SAC at 16.) The Court finds Plaintiff

21 fails to state a claim for relief under §1983 against Defendant Janda for violation of due process.

22 "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right

23 _____

24 operating under the assumption that the charge against Plaintiff was subject to the state's "informal nonadversary
   procedures."

25

26 [21]In his opposition, Plaintiff takes issue with the CDO changing his offense classification from a
   Division "D" offense to a Division "B" offense and argues that the proper classification for battery on a

27 peace officer is a Division "D" offense. (Doc. No. 49 at 17-19.) The Court is unclear as to how this is
   relevant to Plaintiff's allegations of denial of due process.

28     [22]In their motion to dismiss, Defendants do not raise any other arguments as to why Plaintiff's SAC fails
   to state a claim against Defendant White. (See Doc. No. 43-1 at 13-14.)

upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citation omitted); *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (liberty interests created by state law are generally limited to freedom of restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley*, 997 F.2d at 495 (citation omitted).

Because Plaintiff has neither a liberty interest nor a substantive right in inmate appeals, Plaintiff fails to state a claim against Defendant Janda for denial of his Fourteenth Amendment due process rights. The Court finds amendment of this claim would be futile, and therefore recommends Defendants' motion to dismiss Plaintiff's claim against Defendant Janda be **GRANTED WITHOUT LEAVE TO AMEND**. *See James*, 221 F.3d at 1077.

### Conclusion and Recommendation

For the reasons stated above, the Court recommends:

1.  Defendants' motion to dismiss Plaintiff's first claim against Defendants Mills and Barra for sexual assault and excessive force in violation of his Eighth Amendment rights be **GRANTED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**;

2.  Defendants' motion to dismiss Plaintiff's second claim against Defendant Barra for inadequate medical care in violation of his Eighth Amendment rights be **GRANTED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**. Because Plaintiff failed to exhaust his administrative remedies as to his second claim for inadequate medical care, the Court also recommends that Plaintiff's claim against Defendants Mace and Jane Doe be **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**;

/ / /

10cv2642-AJB

3.     Defendants' motion to dismiss Plaintiff's third claim against Defendant White for violation of his Fourteenth Amendment due process rights be **DENIED**; and

4.     Defendants' motion to dismiss Plaintiff's third claim against Defendant Janda for violation of his Fourteenth Amendment due process rights be **GRANTED WITHOUT LEAVE TO AMEND**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. 636(b)(1).

**IT IS HEREBY ORDERED** that no later than **February 27, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **14 days** of being served with the objections.

**IT IS SO ORDERED.**

DATED: February 9, 2012

_____
**BERNARD G. SKOMAL**
United States Magistrate Judge

23                                                                          10cv2642-AJB