1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13

CONDALEE MORRIS,

Plaintiff,

14

v.

15
16
17

M BARRA, Program Sergeant; *et al.*,

18
19

Defendants.

20

Civil No.    10-CV-2642-AJB (BGS)

**REPORT AND RECOMMENDATION:**

**(1) TO GRANT IN PART AND DENY IN PART DEFENDANTS MILLS, BARRA, WHITE, & JANDA'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT;**

**(2) TO GRANT DEFENDANT HUBBEL'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; &**

**(3) TO DENY PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT AGAINST DEFENDANT HUBBEL**

21
22
23
24

On April 12, 2012, Plaintiff Condalee Morris, a state prisoner proceeding *pro se* and in forma pauperis ("IFP") in this civil rights action filed pursuant to 42 U.S.C. §1983, filed a third amended complaint.  ("TAC," Doc. No. 138.)  Currently pending before the Court are several motions regarding Plaintiff's third amended complaint.

25
26
27
28

On May 2, 2012, Defendants M Barra, G J Janda, L Mills and D White filed a motion to dismiss the third amended complaint pursuant to Fed.R.Civ.P. 12(b) for failure to exhaust administrative remedies as to claims against Mills and Barra and for failure to state a claim as to

claims against White and Janda.[1]  (Doc. No. 151.)  After some discovery and extensions of time, Plaintiff Condalee Morris filed a response in opposition on December 7, 2012, *nunc pro tunc* to November 15, 2012.[2]  (Doc. No. 221.)  Defendants filed a reply in support of their motion on November 30, 2012.  (Doc. No. 213.)

On July 31, 2012, Defendant Hubbel (erroneously sued as Hubble) filed a motion to dismiss Plaintiff's third amended complaint pursuant to Fed.R.Civ.P. 12(b) for failure to exhaust administrative remedies.[3]  (Doc. No. 166.)   Despite being given a generous extension of time to file an opposition, Plaintiff has not filed a response in opposition to Defendant Hubbel's motion to dismiss.  (*See* Doc. No. 198.)

Also before the Court are three motions filed by Plaintiff for entry of default against Defendant Hubbel, requesting the Court to enter a judgment against Defendant Hubbel for $48.6 million dollars.  (Doc. Nos. 175, 177, & 210.)

These matters have been referred to the undersigned Magistrate Judge for a Report and Recommendation (R&R). The Court determines that these matters are appropriate for resolution without oral argument and submits the motions on the parties' papers pursuant to Local Civil Rule 7.1(d)(1). For the reasons set forth below, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART and DENIED IN PART**, Defendant Hubbel's motion to dismiss be **GRANTED**, and Plaintiff's motions for default judgment be **DENIED**.

## Background

Plaintiff Condalee Morris is a state prisoner proceeding pro se and in forma pauperis on his Third Amended Complaint filed pursuant to 42 U.S.C. §1983.  (TAC at 1.[4])  In his TAC, Plaintiff

---

[1]Defendants provided Plaintiff with a *Wyatt* notice informing Plaintiff of the requirements and consequences of Defendants' non-enumerated 12(b) motion to dismiss for failure to exhaust administrative remedies.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).  (Doc. No. 151-2.)

[2]In light of discrepancies with Plaintiff's opposition and his request to file excess pages, his opposition was not docketed on the Court's electronic filing system until after Defendants' electronically filed their reply.  (*See* Doc. Nos. 217, 218 & 220.)

[3]Defendant Hubbel also provided Plaintiff with a *Wyatt* notice.  (Doc. No. 166-3.)

[4]For consistency and ease of reference, references to Plaintiff's filings use the court-generated page numbers.

1    alleges that Defendants Mills and Barra sexually assaulted Plaintiff and used excessive force in

2    violation of his Eighth Amendment rights. (TAC at 5-9.) Plaintiff alleges Defendants Barra, Mace,

3    and Hubbel violated his Eighth Amendment right to adequate medical care.  (TAC at 10-13.)

4    Plaintiff alleges Defendants White and G J Janda violated his Fourteenth Amendment right to due

5    process. (TAC at 14-17.)  Plaintiff's claims against Defendants arise out of an encounter Plaintiff

6    had with Defendant Mills and Barra on August 12, 2010, the medical treatment Plaintiff received

7    following this encounter, and a disciplinary hearing regarding the encounter held on September 8,

8    2010.

9    <u>Plaintiff's allegations against Defendant Mills and Barra for excessive force</u>[5]

10        According to Plaintiff's TAC, on August 12, 2010 Plaintiff and inmate Garcia went to the

11   dining hall for dinner.  (TAC at 5.)  Upon walking into the dining hall, Defendant Mills asked

12   Plaintiff to go back out of the hall and tuck in his shirt.  (*Id.*) Plaintiff complied, but untucked his

13   shirt again before he sat down at the table.  (*Id.*) On his way out of the dining hall, Defendant Mills

14   stopped Plaintiff and asked for his i.d. card.  (*Id.*) Plaintiff told Defendant Mills that he did not have

15   one.  (*Id.*)  Defendant Mills then searched Plaintiff for contraband or weapons, but did not find

16   anything.  Plaintiff and inmate Garcia then went to the "B" yard clinic to get their medication.  (*Id.*)

17        While waiting at the "B" yard clinic for Garcia to get his medication, Defendant Mills asked

18   Plaintiff to walk with him back to the front of the dining hall.  (*Id.*)  Plaintiff told Defendant Mills

19   that he "was a coward and a follower and that he don't have any guts."  (*Id.* at 5-6.)  Plaintiff

20   returned to the front of the dining hall with Defendant Mills and inmate Garcia.  (*Id.* at 6.)

21   Defendant Barra was standing at the front of the dining hall when they arrived.  (*Id.* at 6.)

22   Defendant Mills again searched Plaintiff and grabbed and squeezed Plaintiff's testicles.  (*Id.* at 6.)

23   Plaintiff alleges that during his encounter with Defendant Mills he did not resist or threaten the

24   officer in any fashion or break any prison rules.  (*Id.* at 6.)  Plaintiff alleges he suffered swollen

25   testicles and testicular dysfunction as a result of Defendant Mills's excessive force.  (*Id.* at 6.)

26   ───────────

27        [5]The Court's recitation of Plaintiff's allegations mirror that in the Court's Report and
     Recommendation regarding Defendants' motion to dismiss Plaintiff's Second Amended Complaint
28   because the Third Amended Complaint is identical except for the substitution of Jane Doe with
     Defendant Hubbel and additional allegations with respect to Plaintiff's claims against Defendant Janda.

10cv2642-AJB

1    After Defendant Mills searched Plaintiff and grabbed his testicles, Plaintiff said to Defendant

2  Barra, "your [sic] a punk bitch, why don't you do your own dirty work yourself." (*Id.* at 7.)

3  Defendant Barra then searched Plaintiff and grabbed and squeezed Plaintiff's testicles. (*Id.* at 7.)

4  Defendant Barra's search of Plaintiff did not reveal any contraband or weapons. (*Id.* at 7.) Plaintiff

5  alleges that Defendant Barra, in using excessive force during his search, caused a serious injury to

6  his testicles and infliction of pain. (*Id.* at 7.) Plaintiff alleges that during his encounter with

7  Defendant Barra he did not resist or threaten the officer in any fashion or break any prison rules.

8  (*Id.* at 8.) Plaintiff clenched his fist because he was in so much pain. (*Id.* at 7.) Defendant Barra

9  then ordered Plaintiff to turn around and "cuff up." (*Id.* at 7.) Plaintiff complied, was placed in

10  handcuffs, and escorted to facility "B" medical clinic. (*Id.* at 7.)

11    Upon arriving at the "B" yard medical clinic, Defendants placed Plaintiff in holding cell #1.

12  (*Id.* at 8.) Defendant Barra instructed Plaintiff to walk to the back of the cage and face the wall,

13  which Plaintiff did. (*Id.* at 8.) Defendant Barra closed the door, locked it, stuck his hands into the

14  tray slot, and grabbed the handcuffs, causing Plaintiff to fall back against the door and injure his

15  wrist. (*Id.* at 8.) Defendant Barra pulled on the handcuffs again when Plaintiff tried to stand up,

16  causing Plaintiff to fall back into the door a second time. (*Id.* at 8.) Plaintiff alleges he suffered

17  swollen wrists as a result. (*Id.* at 8.)

18    <u>Plaintiffs allegations against Defendants Barra, Mace[6], and Hubbel for denial of medical care</u>

19    Plaintiff alleges that Defendant Mace witnessed the assault by Defendant Barra on him in the

20  "B" yard clinic. (*Id.* at 10.) According to Plaintiff's TAC, Plaintiff also complained to Defendant

21  Mace about the sexual assault on him committed by Defendants Mills and Barra. (*Id.* at 10.)

22  Defendant Barra interfered with Defendant Mace's job, causing Defendant Mace to not treat

23  Plaintiff's swollen testicles, swollen wrist, and substantial pain. (*Id.* at 10.) Plaintiff was denied and

24  delayed medical care for sixteen days. (*Id.* at 10.) Defendant Mace also allegedly fabricated

25  CDCR7219 in order to conceal Defendants Mills and Barra's actions. (*Id.* at 10-11.) Plaintiff was

26  placed in administrative segregation ("Ad-Seg") on August 12, 2010. (*Id.* at 11.)

27

28    [6]Defendant Mace has not been served with the TAC and therefore has not answered or otherwise responded.

After being placed in administrative segregation on August 12, Plaintiff complained to Ad-Seg medical staff Defendant D. Hubbel about the sexual assault by Defendants Mills and Barra and about Defendant Barra's assault in the "B" yard clinic.  (*Id.* at 12.)  Defendant Hubbel ignored and failed to respond to Plaintiff's medical complaints.  (*Id.* at 12.)  Plaintiff wrote a 602 grievance concerning the sexual assault by Defendant Mills and Barra on August 12, 2010.  (*Id.* at 12.)  On August 13, 2010, Plaintiff wrote two sick call requests, seeking appointments for his wrist injury and the sexual assault.  (*Id.* at 12.)  Plaintiff received treatment for his wrist injury.  (*Id.* at 12.)

Plaintiff alleges that from August 12 to August 27, 2010, he suffered pain as a result of a delay in treatment of his swollen testicles.  (*Id.* at 12-13.)  Plaintiff suffered swelling causing him to be unable to sleep, walk, close his legs, or urinate without pain.  (*Id.* at 13.)  On August 27, 2010, Plaintiff was removed from Ad-Seg and placed in central medical before being taken to Pioneers Memorial Healthcare District for the examination of his testicles.  (*Id.* at 13; *id.* at 47-49.)  Plaintiff was diagnosed with testicular swelling and dysfunction.  (*Id.* at 13; *id.* at 47-49.)

<u>Plaintiff's allegations against Defendants White and Janda</u>

Following his encounter with Defendants Mills and Barra, Plaintiff wrote a 602 grievance stating that he was sexually assaulted by Mills and Barra and claiming that they were trying to cover up the assault by saying Plaintiff committed an assault and battery on a peace officer.  (*Id.* at 14.)  On August 21, 2010, Plaintiff received a disciplinary charge for battery on a peace officer based on his encounter with Mills and Barra.  (*Id.* at 14.)  The rules violation report ("RVR") alleged that Plaintiff began clenching his fists after stating to Defendant Barra that he is "a punk bitch, why don't you do your own dirty work yourself."  (*Id.* at 54.)  Barra then ordered Plaintiff to cuff up and escorted Plaintiff to holding cell #1 in the "B" yard clinic.  (*Id.*)  Barra instructed Plaintiff to turn around in order to remove the handcuffs.  (*Id.*)  As Barra placed his handcuff key in the handcuffs to remove them, Plaintiff turned his body to the left and pulled Barra forward into the cell cuff port, causing Barra's forearms to strike the cuff port opening.  (*Id.*) When Barra attempted to remove the handcuff key, Plaintiff continued pulling Barra into the cuff port opening.  (*Id.*)  Plaintiff and Barra were then evaluated by on duty medical staff, who documented the injuries Barra sustained as a result of Plaintiff's actions.  (*Id.*)

Plaintiff had his disciplinary hearing on September 8, 2010 before Defendant White.  (TAC at 15.)  Plaintiff requested that the disciplinary hearing officer call inmate Garcia, Defendant Mills, Defendant Barra, Correctional Officer Coronado, Lieutenant Sigler, Defendant Mace, and Registered Nurse Herrera as witnesses at the hearing.  (*Id.* at 14-15.)  Defendant White only called Defendant Barra as a witness and failed to call the other six witnesses Plaintiff requested.  (*Id.* at 15.)  Defendant White stated that he was not going to call the other witnesses because they would not provide any new or relevant information for the hearing.  (*Id.* at 15.)  Following the hearing, Plaintiff received a written disposition finding him guilty as charged based on a preponderance of the evidence submitted at the hearing.  (*Id.* at 15.)  The written disposition noted the evidence included employees' written reports and photographs taken of cell #1 in the "B" yard clinic.  (*Id.* at 15.)  As a result of his being found guilty of a Division "D" offense, Plaintiff was originally assessed ninety (90) days forfeiture of credit.  (*Id.* at 70 & 72.)  After the hearing officer's finding and disposition was re-reviewed by a Chief Disciplinary Officer ("CDO"), Defendant Janda, on September 24, 2010, the CDO disallowed all credit loss initially assessed and reclassified the offense as a Division "B" offense.  (*Id.* at 87, 92 & 93.)

Plaintiff filed an administrative appeal with Defendant Janda complaining that only one of Plaintiff's witnesses was called by Defendant White.  (TAC at 16; *see id.* at 37-39, 98-100.)  Defendant Janda denied Plaintiff's appeal.  (TAC at 16.)   Plaintiff alleges in his TAC that Janda should have ordered a remand and rehearing because Defendant White failed to call all of his witnesses, the offense was reclassified as a Division "B" offense, a serious offense, and because Plaintiff was assessed a twelve month segregated housing unit ("SHU") term.  (*Id.* at 16-17.)

<u>Defendants Mills, Barra, White and Janda's motion to dismiss</u>

Defendants brought a non-enumerated Fed.R.Civ. P. 12(b) and a Fed.R.Civ.P. 12(b)(6) motion to dismiss Plaintiff's TAC.  (Doc. No. 151.)  In their motion, Defendants seek dismissal of Plaintiff's claim of excessive force against Defendants Mills and Barra because the Court previously dismissed the claim with prejudice for failing to exhaust administrative remedies.  (Doc. No. 151-1 at 3.)   Defendants also seek dismissal of Plaintiff's claim of denial of medical care against

1    Defendant Barra, arguing Plaintiff failed to exhaust administrative remedies on this claim.  (*Id.* at

2    4.)  Defendants also seek dismissal of Plaintiff's claim of denial of due process against Defendant

3    White because it was previously dismissed without leave to amend.  Finally, Defendants seek

4    dismissal of Plaintiff's claim of denial of due process against Defendant Janda for failure to state

5    a claim and because he is entitled to qualified immunity.   (*Id.* at 6-11.)

6            Defendant Hubbel's motion to dismiss

7            Defendant Hubbel has also filed a non-enumerated Fed.R.Civ.P. 12(b) motion to dismiss

8    Plaintiff's TAC.  (Doc. No. 166.)  In her motion, Defendant Hubbel seeks dismissal of Plaintiff's

9    claim of denial of medical care, arguing Plaintiff failed to exhaust administrative remedies on these

10   claims.  (Doc. No. 166-1.)

11           Plaintiff's motions for default judgment

12           Also pending before the Court are three motions for default judgment filed by Plaintiff asking

13   the Court to enter default judgment in favor of Plaintiff and against Defendant Hubbel for $48.6

14   million dollars.  (Doc. Nos. 175, 177 & 210.)  Plaintiff argues that Defendant Hubbel was served

15   with a copy of the TAC and summons on June 11, 2012, but failed to respond within twenty days.

16   (*Id.* at 2.)

17                                              **Discussion**

18   **I.  Failure to Exhaust Administrative Remedies**

19           A.  Legal Standards for Motion to Dismiss for Failure to Exhaust Administrative Remedies

20   under Fed.R.Civ.P. 12(b)

21           The Prison Litigation Reform Act of 1995 provides that:

22           [n]o action shall be brought with respect to prison conditions under [42 U.S.C. §
             1983], or any other Federal law, by a prisoner confined in any jail, prison, or other
23           correctional facility until such administrative remedies as are available are exhausted.

24   42 U.S.C. §1997e(a).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality

25   of prisoner suits."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002). However, the prisoner is not required

26   to specially plead or demonstrate exhaustion in his or her complaint because failure to exhaust is an

27   affirmative defense under the PRLA. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

28

                                                    7

The proper vehicle for challenging a complaint based on failure to exhaust administrative remedies is an unenumerated motion under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20. If the district court concludes that the prisoner has failed to exhaust his or her administrative remedies, the claim should be dismissed without prejudice. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059, 1063 (9th Cir. 2007); *Wyatt*, 315 F.3d at 1120.

Failure to exhaust may not be waived. *See Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006) ("[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"). The United States Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PRLA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. A prisoner also cannot satisfy the PRLA's exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 584 U.S. at 83-84. Nor can a prisoner who did not make any attempt to utilize the prison grievance system sidestep the exhaustion requirement by arguing that it now would be futile to attempt to exhaust within the prison system. *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2002) ("we stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *see also Woodford*, 584 U.S. at 100 ("if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court").

As noted by the U.S. Supreme Court in *Woodford*, California has a "relatively simple" grievance process for prisoners who seek to challenge the conditions of confinement. 584 U.S. at 85. Under the regulations in place at the time Plaintiff filed his 602 form in 2010[7], to exhaust this

[7] The California Department of Corrections and Rehabilitation inmate formal administrative appeals process underwent a major revision in 2011, including the discontinuation of the informal appeal process. *See* 2011 CA REG TEXT 248824 (NS).

10cv2642-AJB

process a prisoner had to proceed through several levels of appeal: (1) informal resolution[8]; (2) formal written appeal on a CDC 602 inmate appeal form (hereinafter "Form 602") at the first level of appeal[9]; (3) second level of appeal to the institution head or designee[10]; and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation (hereinafter the "Director). Cal. Code Regs. tit. 15, § 3084.5; *Woodford*, 584 U.S. at 85-86; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). A final decision from the Director's level of review generally satisfies the exhaustion requirement under §1997e(a). *See Booth*, 532 U.S. at 739-41.

When Plaintiff submitted his 602 forms in 2010, the prisoner had to submit the appeal within fifteen working days from the date of the event or decision being appealed, or submit it to the next level of review within fifteen working days of receiving an unacceptable lower level appeal decision. Cal. Code Regs. tit. 15, § 3084.6(c).[11] Failure to timely submit an appeal could be grounds for rejection if the inmate had the opportunity to submit the appeal within the prescribed time. Cal. Code Regs. tit. 15, §3084.3(c)(6). Additionally, an appeal alleging misconduct by a departmental peace officer was to be accompanied by a Rights and Responsibilities Statement. Cal. Code Regs. tit. 15, § 3084.1(e).[12] Failure to submit the form was cause for rejecting the appeal. *Id.* An inmate's

---

[8] Under California Code of Regulations Title 15, § 3084.5(a)(3), the informal level of appeal was bypassed for appeals of (1) classification committee actions; (2) serious disciplinary infractions; (3) classification staff representative actions; (4) departmental regulations, policies, or operational procedures; (5) exceptional circumstances defined in section 3084.7; (6) any action which the appeals coordinator determines cannot be resolved informally; (7) alleged misconduct by a departmental peace officer; or (8) the denial of disabled inmate or parolee requests for reasonable modification or accommodation filed on CDC Form 1824 (1/95), Reasonable Modification Or Accommodation Request, pursuant to section 3085.

[9] The appeals coordinator could elect to bypass an appeal at the First Formal level and submit it directly to the Second Formal Level for (1) a policy or procedure implemented by the institution head; (2) a policy, procedure or regulation implemented by the department; (3) an issue which cannot be resolved at the division head's level; e.g., appeal of a regular transfer; (4) serious disciplinary infractions. Cal. Code Regs tit. 15, §3084.5(b).

[10] Only matters involving involuntary transfers to the California Medical Facility or Atascadero State Hospital bypassed the Second Formal Level and were submitted directly to the Third Formal Level. Cal. Code Regs. tit. 15, §§ 3084.5 (c); 3084.7(d)(4)(B).

[11] California Code of Regulations Title 15, §3084.8(b) now provides the time limits for submitting an appeal. Inmates now must submit the appeal within 30 calendar days of the event or decision being appealed.

[12] California Code of Regulations Title 15, §3084.1(e) was amended in 2011, deleting the requirement of a Rights and Responsibility Statement.

1   refusal to be interviewed or cooperate with the reviewer would result in the cancellation of his

2   appeal.  Cal. Code Regs. tit. 15, §3084.4(d).

3                                   **B.**   Sexual Assault and Excessive Force by Defendants Mills and Barra

4           On March 27, 2012, the Court, in its order regarding Defendants' motion to dismiss

5   Plaintiff's second amended complaint, dismissed Plaintiff's claims for sexual assault and excessive

6   force against Defendants Mills and Barr for failure to exhaust administrative remedies.  (Doc. No.

7   134 at 8-10.) The Court's dismissal of these claims was with prejudice.  (*Id.* at 17.)  In his TAC,

8   Plaintiff's claims for sexual assault and excessive force against Defendants Mills and Barra are

9   identical to those previously dismissed with prejudice.

10           Plaintiff argues in his opposition that his appeal should not have been rejected because he

11   should not have been required to submit a Rights and Responsibility statement.[13]  (Doc. No. 221 at

12   3.) In support of this, Plaintiff has attached a memorandum dated September 8, 2006 that was issued

13   in response to the Ninth Circuit's decision in *Chaker v. Crogan*, 428 F.3d 1215 (9th Cir. 2005).  (*Id.*

14   at 31.)  In *Chaker*, the Ninth Circuit held California Penal Code section 148.6 unconstitutional

15   because it discriminated based on viewpoint by making only false statements against a peace officer

16   a misdemeanor.  428 F.3d at 1228.

17           In 2006, Cal. Code Regs. tit. 15 , 3084.1(e) provided that "Pursuant to Penal Code section

18   148.6, it is against the law to make a complaint against a departmental peace officer that the

19   complainant knows to be false.  An appeal alleging misconduct by a departmental peace office . .

20   . shall be accompanied by a Rights and Responsibility Statement as shown in section 3391(d)."  The

21   Rights and Responsibility Statement in 2006's version of section 3391(d) contained language

22   informing the inmate that he has the right to make a complaint against a peace officer, that

23   California law requires the agency to have a procedure to investigate inmate complaints, and that

24

25          [13]Plaintiff's opposition also attempts to reargue that his appeal was exhausted and that it was

26   CDCR staff that prevented him from exhausting his remedies by not complying with timelines.  The
     Court discussed and analyzed at length Plaintiff's administrative appeal of these claims in its Report and

27   Recommendation on Defendants' motion to dismiss Plaintiff's SAC and in its Order regarding the R
     &R.  (Doc. Nos. 119 & 134.)  As Plaintiff provides no new evidence of exhaustion, the Court will not

28   revisit these arguments.

10cv2642-AJB

the inmate has a right to a written description of the procedure.  Cal. Code Regs. tit. 15, §3391(d) (2006).  Section 3391(d)'s Rights and Responsibility Statement also included a warning that "it is against the law to make a complaint that you know to be false.  If you make a complaint against an officer knowing it is false, you can be prosecuted on a misdemeanor charge."  *Id.*  Following the Ninth Circuit's decision in *Chaker*, section 3084.1(e) was amended in November 2006 to remove the citation to and language from Penal Code section 148.6.  *See* Cal. Code Regs. tit. 15, 3084.1(e) & (History ¶9) (2010).  Section 3391(d) was amended at the same time to remove the language warning an inmate making a complaint about the possibility of prosecution for a false complaint. *See* Cal. Code Regs. tit. 15, §3391(d) & (History ¶7) (2010).  The memorandum Plaintiff attaches to his opposition even notes that "sections 3391(d) and 3084.1(e) are being modified to eliminate references to the now unconstitutional law." (Doc. No. 221 at 31.)  Therefore, in 2010, at the time Plaintiff filed his appeal, a Rights and Responsibility statement was still required, but did not include the language from Penal Code section 148.6 deemed unconstitutional in 2006.  *See* Cal. Code Regs. tit. 15, §3084.1(e) (2010).  Accordingly, Plaintiff failed to comply with the grievance procedures for submitting his appeal and failed to exhaust his administrative remedies.

Plaintiff's opposition also argues that these claims should have been dismissed without prejudice,[14] as Ninth Circuit case law provides that "[i]f the district court concludes that the prisoner has failed to exhaust his or her administrative remedies, the claim should be dismissed without prejudice. (Doc. No. 221 at 2 (citing *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059, 1063 (9th Cir. 2007)).)  In light of this argument, Defendants in their reply brief request that the Court dismiss these claims from the TAC without prejudice, but also without leave to amend.  (Doc. No. 213 at 2.)  As Plaintiff has not been able to cure the deficiencies of his allegations and evidence of exhaustion with respect to his claims for excessive force and sexual assault against Defendants Mills and Barra in the TAC, the Court recommends Defendants' motion to dismiss these claims be

_____

[14]The undersigned, in finding these claims not procedurally exhausted, recommended the dismissal of the excessive force and sexual assault claim from the SAC be without prejudice and without leave to amend.  (Doc. No. 119 at 15.)  The Court, in its order on the Report and Recommendation, dismissed the claims with prejudice.  (Doc. No. 134 at 9, 10.)

**GRANTED** and these claims be **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**.  *O'Guinn*, 502 F.3d at 1059, 1063; *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir.1987)).

    C.  Denial of Medical Care by Defendants Barra and Hubbel

    *1.  Defendants' Evidence regarding Administrative Appeals*

On November 6, 2010, Plaintiff filled out a Form 602 regarding medical care, alleging that Defendant Barra interfered with Defendant Mace's job on August 12, 2010 when Plaintiff complained to Mace about the sexual assault by Defendants Barra and Mills.  (Doc. No. 166-2, Alaniz Decl., Ex. 2 at 7.)  Plaintiff also alleged that Defendant Mace witnessed the assault in the "B" yard clinic and that Mace fabricated CDCR 7219 to conceal the Defendants' actions.  (*Id.*)  In his appeal, Plaintiff requested Defendants Mace, Barra, and Jane Doe[15] be held liable for the physical and emotional injury resulting from their failure to provide adequate medical care.  (*Id.*)  The appeal was not given a Log Number.

On November 18, 2010, Plaintiff's first level appeal of the medical care he received was screened out by the Calipatria Appeals Coordinator in a written notice.  (Doc. No. 166-2, Alaniz Decl., Ex. 3 at 10.)  Plaintiff's appeal was returned to him because "there [was] too great a time lapse between when the action or decision occurred and when [Plaintiff] filed [his] appeal with no explanation of why you did not or could not file in a timely fashion."  (*Id.*)  The notice instructed Plaintiff to submit an explanation and supporting documentation explaining why he did not or could not file his appeal timely in order to further pursue his appeal.  (*Id.*)  Plaintiff was to do so within fifteen working days.  (*Id.*)

In response to the screening at the first level, on December 6, 2010, Plaintiff submitted Section D of Plaintiff's unnumbered appeal, explaining why he did not timely submit the appeal. (Doc. No. 166-2, Alaniz Decl. ¶7 & Ex. 4.)  In section D, Plaintiff explained that he was waiting on all of the 115 hearing documents concerning battery on staff, which he received on September 20,

---

    [15]Plaintiff has named Defendant Hubbel in place of Jane Doe in his Third Amended Complaint.

2010.  (*Id.* Ex. 4 at 11.)  Plaintiff also wrote that there was an investigation occurring at the same time related to his appeal Log Number CAL-A-10-1870 and that he was waiting until the investigation was over in order to support his medical care appeal.  (*Id.* Ex. 4 at 11.)

On December 13, 2010, Plaintiff's unnumbered appeal was cancelled in a written letter. (Doc. No. 166-2, Alaniz Decl. Ex. 5 at 14.)  The decision explained that "[y]our explanation for submitting an untimely appeal is noted; however, it is not a valid or compelling argument to forward your appeal. . . Your appeal remains untimely.  DO NOT RESUBMIT THIS APPEAL.  This appeal has been cancelled and the original has been kept on file."  (*Id.*)

### 2. Plaintiff's Evidence of Exhaustion

In his response in opposition to Defendants' motion to dismiss, Plaintiff includes the first level screening of this appeal, his Section D response to the first level screening, and a redacted copy of the "Confidential Supplement to Appeal 'Appeal Inquiry'" on his appeal Log Number CAL-A-10-1870.[16]  (*See* Doc. No. 221.)  Plaintiff, however, concedes in his opposition that he did not meet the formal requirements of the grievance system on this appeal.  (*Id.* at 35.)  Instead of trying to show he exhausted his appeal, Plaintiff argues that he did not timely submit his medical care appeal because he was told by ISU officer Garcia that he must wait for the completion of the ISU investigation and receipt of the ISU report before filing a formal grievance.  (Doc. No. 221 at 32.) Plaintiff also argues that prison regulations induced him to believe that he was required to wait for completion of the ISU investigation prior to filing a formal grievance.  (*Id.* at 34-35.)

### 3. Analysis of Plaintiff's claim

The Court finds Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Barra and Hubbel for denial of medical care in violation of his Eighth

---

[16]  Plaintiff did not file an opposition to Defendant Hubbel's motion to dismiss.  Plaintiff's opposition entails 161 pages of argument and exhibits intermixed.  (*See* Doc. No. 221.)  Despite explicit instructions with citations to the Court's local rules, Plaintiff's opposition fails to comply with the required format. (*See* Doc. No. 185 at 10.)  Many of the documents attached to Plaintiff's opposition are prior court filings in this case that the Court has already ruled upon, filings by other parties, including Defendant Hubbel's motion to dismiss, and other material that is irrelevant or inappropriate to Plaintiff's proffer of evidence of exhaustion on this claim.  In order to move this case forward, the Court accepted Plaintiff's opposition despite the failure to comply with formatting requirements.

1   Amendment rights.  Plaintiff alleges that he was denied medical care for his complaints of swollen

2   testicles from August 12, 2010 to August 27, 2010.  (TAC at 10, 12.)  Plaintiff filed his Form 602

3   regarding denial of medical care on November 6, 2010.  (Doc. No. 166-2, Alaniz Decl., Ex. 2 at 7.)

4   Pursuant to Cal. Code Regs. tit. 15, § 3084.6(c), Plaintiff had fifteen working days to submit his

5   appeal.   His appeal was properly rejected for being untimely at the first level of review, as

6   November 6, 2010 was more than 15 working days after the event occurred, even if using August

7   27, 2010 as the date of the event.  The rejection of his appeal instructed Plaintiff to submit an

8   explanation and supporting documentation explaining why he did not or could not file his appeal

9   timely. (Doc. No. 166-2, Alaniz Decl., Ex. 3 at 10.)  While Plaintiff submitted Section D explaining

10  that he did not timely submit his appeal because he was waiting on the 115 hearing documents and

11  the results of the investigation into his appeal regarding the assault allegations, this explanation was

12  rejected and his appeal cancelled on December 13, 2010.  (*Id.* at Ex. 5 at 14.)  There is no evidence

13  that Plaintiff appealed the cancellation of this appeal or pursued his appeal further in the

14  administrative grievance system.  Therefore, there is no final decision at the Director's level.    A

15  prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective administrative

16  appeal.  *Woodford*, 548 U.S. at 83-84.

17          Plaintiff argues in his opposition that his late filing should be excused because an ISU officer

18  told him he had to wait until completion of the investigation to file his medical care grievance and

19  because prison regulations induced him to wait to file.  (Doc. No. 221 at 32, 34-5.)  Therefore, he

20  asserts that he exhausted the administrative remedies available to him.  In its Order regarding the

21  Report and Recommendation, the Court rejected this argument, noting that Plaintiff failed to provide

22  the name of the security officer who gave him this information, failed to provide an affidavit or

23  declaration stating these facts, and failed to point to a relevant regulation requiring an inmate to wait

24  before filing a formal grievance.  (Doc. No. 134 at 11.)  The Court concluded that "[w]ithout more

25  facts and/or evidence to excuse his late filing, . . . Plaintiff failed to meet the procedural

26  requirements for exhaustion regarding his claim for deliberate indifference to medical needs." (*Id.*

27  at 12.)  Additionally, the Court rejected Plaintiff's citation to Cal. Code Regs. tit. 15, §3084.1(a) as

28

10cv2642-AJB

a basis to wait to file his grievance until after the completion of the ISU investigation. (*Id.* at 11-12.) The Court found that "it is not clear how this regulation induced Plaintiff to delay filing his grievance."[17] (*Id.* at 12.) The Court dismissed Plaintiff's medical care claims without prejudice. (*Id.* at 12.)

In his response in opposition to Defendants' motions to dismiss, Plaintiff now asserts that an officer Garcia and "others" told him he had to wait for the completion of the ISU investigation into his staff complaint of excessive force and sexual assault. (Doc. No. 221 at 32.) Plaintiff alleges that Garcia was one of the ISU security officers that told him he had to wait for a copy of the ISU investigation before filing a formal grievance and provided an affidavit to this effect with his TAC. (*Id.* at 34; Doc. No. 138 at 50-51.) In his affidavit attached to his TAC, Plaintiff avers that on August 27, 2010, the "goon squad" came to his door in Ad/Seg and took him to a room and questioned him about the sexual assault by Defendants Mills and Barra. (*Id.* at 50.) Plaintiff avers that he requested a copy of the investigation report and the "goon squad officer" told him that after the completion of the investigation, they would provide him with a copy of the report. (*Id.* at 50.) Plaintiff states that he asked the "goon squad officer" if he should file an inmate appeal regarding being denied medical care and the officer told him to wait until the investigation was over and that they would provide him with a complete investigation report that would support his allegation of being denied medical care. (*Id.* at 50-51.) Plaintiff argues that the Cal. Code Regs. tit. 15, § 3005(b)[18] requires inmates to obey verbal orders and instructions from departmental staff, and

---

[17]Plaintiff also asserts in his opposition, without any explanation or legal authority, that it is clear how § 3084.1(a) induced him to believe that he had to wait for completion of the investigation of his excessive force and sexual assault grievance prior to filing a formal medical care grievance. (Doc. No. 221 at 34.) The Court previously discussed this contention and rejected it. Plaintiff's current opposition offers nothing to change this analysis and therefore the Court will not address it at length.

[18]Plaintiff also asserts that Cal. Code Regs. tit. 15, §3391(b) applies, as he is a citizen of the state of California and therefore the same time limitations should govern his complaint concerning employee conduct. (Doc. No. 221 at 33.) Section 3391(b) provides that "an allegation by a non-inmate of misconduct by a departmental peace officer . . . is a citizen's complaint pursuant to Penal Code section 832.5. Citizen's complaints alleging misconduct of a departmental peace officer shall be filed within twelve months of the alleged misconduct." The Court rejects this argument. Plaintiff was an inmate at the time of the alleged departmental peace officer misconduct, and therefore the citizen's complaint time limitations clearly do not apply to his inmate grievance regarding medical care received in prison.

10cv2642-AJB

1   therefore he was required to wait for the ISU report before filing his medical care grievance.  (Doc.

2   No. 221 at 35.)

3            Plaintiff submits no witness declarations or documentary evidence to support his account of

4   the ISU officer's alleged statements that he had to wait to file a medical care grievance until he

5   received a copy of the ISU report.  Plaintiff has attached to his opposition a redacted copy of the

6   Confidential Supplement to Appeal report on his excessive force and sexual assault grievance.

7   (Doc. No. 221 at 42.)  This report is dated September 27, 2010 and names R. Nelson, Correctional

8   Lieutenant as the only witness and Mills and Barra as the accused staff members.  (*Id.*)  The report

9   states the M. Carpio interviewed Lieutenant Nelson on September 23, 2010 regarding Plaintiff's

10  staff complaint against Mills and Barra.  (*Id.*)  According to the report, once informed of Plaintiff's

11  sexual assault allegations eighteen days after the fact, Nelson transported Plaintiff to Pioneers

12  Memorial Hospital[19] and also interviewed Plaintiff.  (*Id.*)  The report does not mention any other

13  officers interviewing or speaking with Plaintiff about his medical care claim.  The report does not

14  name or mention an officer Garcia and notes that it is "not for inmate distribution."  (*Id.*)

15           Additionally, Plaintiff, at the latest, received his copy of the staff complaint response

16  following the investigation into his excessive force and sexual assault allegations on October 5,

17  2010.  (*See* Doc. No. 221 at 24 (report dated October 1, 2010) & 21 (Plaintiff's dissatisfaction with

18  staff complaint response dated October 5, 2010).)  The staff complaint response noted that a

19  "confidential inquiry" had been conducted, where Lieutenant Nelson, Sergeant Barra and Officer

20  Mills were questioned by Lieutenant Carpio.  (*Id.* at 24.)  The response also informed Plaintiff that

21  all staff personnel matters are confidential in nature, "the details of the any inquiry will not be

22  shared with staff, members of the public, or inmates," and that "the inquiry is complete."  (*Id.* at 24.)

23  At this point, Plaintiff was informed that the inquiry into his staff complaint was complete and that

24  he would not receive any further details regarding the investigation.  Despite receiving a copy of the

25  response to his staff complaint on October 5, 2010, Plaintiff did not file his grievance until

26  ───────────────

27           [19]Although the report does not state a date when Plaintiff was transported to Pioneers Memorial
    Hospital, his medical records show that he was evaluated at Pioneers on August 27, 2010.  (*See* Doc.
28  No. 138 at 47-49.)

November 6, 2010, more than fifteen working days after receiving the document.  Therefore, Plaintiff's medical care grievance was still untimely and fails to satisfy the PRLA's exhaustion requirement.[20]  *See Woodford*, 584 U.S. at 83-84.

Because the Court finds Plaintiff failed to properly exhaust his administrative remedies as to his second cause of action against Defendant Barra and Defendant Hubbel for denial of medical care in violation of his Eighth Amendment Rights, the Court recommends that Defendants' motions to dismiss be **GRANTED** and this claim be **DISMISSED WITHOUT PREJUDICE**. Additionally, because the Court finds that amendment of Plaintiff's claims against Defendants Barra and Hubbel for denial of medical care in violation of his Eighth Amendment rights would be futile given his failure to exhaust, the Court recommends denying leave to amend as to this claim.[21]  *See James*, 221 F.3d at 1077.

## II. Failure to State a Claim

### A. Legal Standards

#### 1. Rule 8 and Rule 12(b)(6) Standards

The plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

---

[20]Regardless of Plaintiff's allegations that an officer Garcia told him he had to wait to file his grievance, Plaintiff still failed to exhaust his administrative remedies by failing to appeal the cancellation of his appeal.  This administrative review was available to Plaintiff, as the cancellation of his appeal informed him that he may file a separate appeal on the cancellation decision. (Doc. No. 166-2, Alaniz Decl., Ex. 5 at 14); *see* 42 U.S.C. §1997e(a) ("[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as **are available** are exhausted.").

[21]In his opposition, Plaintiff includes a request for a continuance of this matter so that he may develop further information regarding who was assigned to ISU and told him to wait to file his grievance in August 2010.  The Court denies this request as Plaintiff received a copy of the staff complaint response, at the latest, on October 5, 2010, was informed he would receive no details into the inquiry, and failed to submit his grievance within fifteen working days.  Further discovery on which officers were working with the ISU team on August 27, 2010 does not change this timeline.

1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper without converting the motion to one for summary judgment." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n. 2 (9th Cir.1980)). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading...." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313–14 (9th Cir.1996). "Such consideration does not convert the motion to dismiss into a motion for summary judgment." *Id.* (quotation omitted). Here, Plaintiff has attached various exhibits to his TAC and the Court will consider these exhibits in deciding the instant motion. Additionally, Plaintiff's TAC contains allegations relying on and referring to the contents of exhibits submitted with Plaintiff's opposition. The Court will also consider these exhibits in deciding the instant motion, as no party has questioned their authenticity.

### 2.  Standards Applicable to Pro Se Litigants

Factual allegations asserted by pro se plaintiffs, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519,

520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard still applies to pro se pleadings post-*Twombly*). Thus, where a plaintiff appears pro se in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir.1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under §1983. "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir.1987)). Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623–24 (9th Cir. 1988). But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. *See James*, 221 F.3d at 1077.

### 3.  Stating a Claim under 42 U.S.C. §1983

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978).

### B.  Analysis of Plaintiff's Claims

### 1. Plaintiff's Claim against Defendant White

The Court, in its Order regarding Defendants' motion to dismiss Plaintiff's Second Amended Complaint, dismissed Plaintiff's claim against Defendant White for violation of his Fourteenth Amendment right to procedural due process without leave to amend.  (Doc. No. 134 at 13-15.) Plaintiff's allegations in his TAC against Defendant White are identical to those alleged in his SAC. (*See* TAC at 14-15; *c.f.* SAC, Doc. No. 39 at 14-15.)   Because Plaintiff was not given leave to amend this claim and his allegations in the TAC are identical to those in the SAC, the Court recommends Defendants' motion to dismiss this claim be **GRANTED**.   Additionally, because Plaintiff failed to cure the deficiencies of this claim in his TAC and amendment of this claim would be futile, the Court recommends dismissing this claim **WITHOUT LEAVE TO AMEND**.

### 2. Plaintiff's Claim against Defendant Janda

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983).  With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995).  Liberty interests created by state law or prison regulations are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Plaintiff alleges in his TAC that Defendant Janda violated his Fourteenth Amendment due process rights by denying Plaintiff's administrative appeal regarding Defendant White's refusal to call six of Plaintiff's witnesses at his disciplinary hearing.  (TAC at 16.)  Plaintiff alleges that Defendant Janda violated his due process rights by failing to remand and order a rehearing based upon the failure of White to call six witnesses.  (*Id.*)  Plaintiff also alleges that White found him guilty of a Division "D" offense, which Plaintiff alleges is an administrative violation, and

Defendant Janda reclassified the RVR to a Division "B" offense, which Plaintiff alleges is a serious offense, without a remand and rehearing.[22]  (*Id.* at 16-17.)  As a result of this, Plaintiff alleges that the classification of his RVR as a Division "B" offense, the credit loss, and a twelve month SHU term assessment were all in error because he did not receive a remand and rehearing under Cal. Code Regs. tit. 15, section 3313(c)(4)(A)(B)(C) & (5)[23].  (*Id.* at 17.)

Defendant Janda's review of Plaintiff's appeal noted that the RVR for battery on a peace officer was originally misclassified as a Division "D" offense, which error was not caught by the Senior Hearing Officer ("SHO") at the time of his hearing, and consequently Plaintiff was found guilty of a Division "D" offense.  (Doc. No. 138 at 87.)  Janda went on to note that a Chief Disciplinary Officer ("CDO"), who was Janda himself, reviewed the SHO's findings and the RVR and noted the misclassification of the offense in his review. (*Id.* at 87 & 93.) The CDO, Janda, in his review noted that the RVR's classification of battery on a peace officer corresponded to a Division "B" offense and disallowed all credit loss initially assessed.  (*Id.* at 87.)  Based on this information, Defendant Janda at the appellate level determined that procedures were followed and due process was afforded to Plaintiff in the processing of his RVR.  (*Id.* at 87.)

The Court previously found Plaintiff failed to state a claim against Defendant Janda for a violation of due process based upon Janda's denial of his appeal regarding the failure of White to call six of his witnesses.  (Doc. No. 134 at 16-17.)  The Court noted that Plaintiff did not allege in his SAC that Defendant Janda failed to investigate or consider his appeal, and therefore failed to state a cause of action for a due process violation. (*Id.*)  In his TAC, Plaintiff does not cure this

---

[22]When a prison inmate is charged with a serious rules violation that is believed to be a violation of law, he is served with a CDCR 115 citation ("Rules Violation Report"). Cal.Code Regs. tit. 15, § 3312(a)(3); *In re Johnson*, 176 Cal.App.4th 290, 294 (Cal.App.2009). CDC 115 citations are either "administrative," resulting in a loss of various prison privileges and assignment of extra duty but no credit loss, or "serious," resulting, inter alia, in loss of credits of up to 360 days. Cal.Code Regs. tit. 15, § 3313(a); §§ 3314(e); 3315(f)(3); 3323(b)-(h).

[23]Section 3313(c)(4) provides that "After the disciplinary hearing, an administrative classification shall not be changed to serious unless the chief disciplinary officer or director orders a rehearing of the charges as a serious rule violation."  Cal. Code Regs. tit. 15, §3313(c)(4). "When a rehearing is ordered by the chief disciplinary officer or director, the inmate shall be provided all rights and procedural safeguards of a serious rule violation hearing."  *Id.* §3313(c)(4)(A).

pleading deficiency as he again fails to allege that Janda failed to investigate or consider his appeal. (*See* Doc. No. 138 at 16-17.)  Therefore, the Court finds Plaintiff again fails to state a claim for a due process violation against Janda for his denial of Plaintiff's appeal regarding White's refusal to call witnesses.

Plaintiff, however, includes new allegations in his TAC regarding Defendant Janda's role in reclassifying his RVR as a serious offense without ordering a rehearing as required by section 3313(c)(4).  Defendant Janda, acting as a Chief Disciplinary Officer, reviewed White's findings, noted the misclassification of the RVR as a Division "D" offense, and restored all forfeited credits on September 24, 2010. (Doc. No. 138 at 93.)  Section 3313(c)(4) provides that "[a]fter the disciplinary hearing, an administrative classification shall not be changed to serious unless the chief disciplinary officer or director orders a rehearing of the charges as a serious rule violation."  Cal. Code Regs. tit. 15, §3313(c)(4).  "When a rehearing is ordered by the chief disciplinary officer or director, the inmate shall be provided all rights and procedural safeguards of a serious rule violation hearing."  *Id.* §3313(c)(4)(A).

The Court finds that Plaintiff fails to sufficiently allege a violation of his due process rights by Janda for failing to order a rehearing on the RVR once he reclassified it as a Division "B" offense.  Because Plaintiff alleges no deprivation of a constitutionally protected liberty interest as Janda restored the 90 days of forfeited credits assessed by White, Plaintiff fails to state a claim against Janda for a due process violation.  *See, e.g.*, *Womack v. Grannis*, No. 10-17952, 2011 WL 4794939, at *1 (9th Cir. Oct. 11, 2011) (affirming district court's dismissal of due process claim because good time credits had been restored).  Additionally, Plaintiff's allegations regarding the nature of his RVR are unsupported by documents he attaches to his TAC and by the prison regulations.  Plaintiff alleges that his RVR was initially for an administrative violation and subsequently reclassified as a serious rule violation without Janda ordering the required rehearing.  However, a Division "D" offense *is* a serious rule violation and may lead to a credit forfeiture of 61-90 days.  *See* Cal. Code Regs. tit. 15, §3323(a) ("Upon a finding of guilt of a serious rule violation, a credit forfeiture . . . shall be assessed within the ranges specified in (b) through (h) below") & (f)

("Division 'D' offenses; credit forfeiture of 61-90 days.). A Division "B" offense, which includes "[b]attery on a peace officer not involving the use of a weapon," is also a serious rule violation and may lead to a credit forfeiture of 121-150 days. *Id.* §3323(d)(1). White's referral to a clinical psychiatrist following the disciplinary hearing even notes that on September 8, 2010, Inmate Morris appeared before him for "adjudication of this Serious Rules Violation Report." (Doc. No. 138 at 71.) Because Janda's reclassification of Plaintiff's RVR from a Division "D" offense to a Division "B" offense did not change an administrative classification to a serious classification as Plaintiff was always charged with a serious rule violation, a rehearing was not required under the regulations and Janda did not violate the regulations. Therefore, Plaintiff fails to sufficiently allege a violation of a regulation amounting to an atypical and significant deprivation.

Plaintiff also alleges that his twelve month Security Housing Unit ("SHU") assessment was also in error because of the failure of Janda to order a rehearing on the RVR. For the reasons set forth above, a rehearing was not required on the RVR under the regulations because it was always processed as a serious rule violation of battery on a peace officer. Furthermore, it is unclear from Plaintiff's TAC how Defendant Janda was associated with any subsequent SHU term assessment following the RVR, as Plaintiff does not allege that Defendant Janda participated in the assessment process, reviewed any assessment, or denied Plaintiff any required procedural protections in connection with a SHU assessment.[24] Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Department of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

---

[24]The only document provided by Plaintiff that mentions a twelve month SHU term is a report of an Initial ASU annual review that notes that Plaintiff was placed in ASU on 8/12/2010 for the offense of battery on a peace officer and if found guilty Plaintiff *could* be assessed a twelve month SHU term. (Doc. No. 138 at 102.) The report was signed by D.G. Adams, J. Anaya, and lists the other Institutional Classification Committee ("ICC") members, none of which are Defendant Janda. (*See id.*) The only other document that mentions a possible SHU term is a referral by White of Plaintiff to the Institutional Clinical Psychiatrist for an evaluation per the *Madrid* decision before consideration by the ICC of a possible Security Housing Unit ("SHU") term assessment following his decision finding Plaintiff guilty. (Doc. No. 138 at 71 & 101.) Defendant Janda is not named in either document.

10cv2642-AJB

meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.1982).  As such, the Court finds Plaintiff fails to sufficiently allege Defendant Janda personally participated in the SHU assessment to be held liable for any alleged due process violation.

As Plaintiff fails to sufficiently allege a due process violation against Defendant Janda for his review of Plaintiff's appeal or for his reclassification of the RVR as a Division "B" offense without ordering a rehearing, the Court recommends Defendants' motion to dismiss this claim be **GRANTED**.  The Court further finds amendment of this claim would be futile as Plaintiff failed to cure the deficiencies noted from his SAC, and therefore recommends this claim be **DISMISSED WITHOUT LEAVE TO AMEND**. *See James*, 221 F.3d at 1077.

Because the Court recommends that Plaintiff's claim against Defendant Janda be dismissed without leave to amend for failing to state a claim, the Court need not reach Defendants' motion to dismiss this claim based upon qualified immunity.  (Doc. No. 151-1 at 9-11.)  Therefore, the Court recommends Defendants' motion to dismiss based on qualified immunity be **DENIED WITHOUT PREJUDICE**. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir.1999) (holding that the court is usually "not equipped at this stage to determine whether qualified immunity will ultimately protect [the defendant]. Those issues must be resolved at summary judgment or at trial."); *see also Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies.") (citing *Jensen v. City of Oxford*, 145 F.3d 1078, 1085 (9th Cir.1998)).

### III.  Plaintiff's Motions for Default Judgment Against Defendant Hubbel

Also pending before the Court are three motions for default judgment filed by Plaintiff asking the Court to enter default judgment in favor of Plaintiff and against Defendant Hubbel for $48.6 million dollars.  (Doc. Nos. 175, 177 & 210.)  Plaintiff argues that Defendant Hubbel was served

10cv2642-AJB

with a copy of the TAC and summons on June 11, 2012, but failed to respond within twenty days. (*Id.* at 2.)  When a defendant fails to timely answer a complaint, a plaintiff may move the court for an entry of default judgment. Fed.R.Civ.P. 55(b)(2). The district court's decision whether to enter a default judgment is discretionary. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980) (per curiam).

Plaintiff is correct that on June 11, 2012, a copy of the summons and complaint was mailed to Defendant Hubbel. (*See* Doc. No. 160.)  However, on June 29, 2012, the U.S. Marshal received a waiver of service from Defendant Hubbel and sent a copy to the Court and to Plaintiff. (*Id.*)  The waiver of service, signed by counsel for Defendant Hubbel, states that judgment may be entered against Defendant Hubbel if an answer or motion under Rule 12 is not served upon Plaintiff within 60 days after June 11, 2012. (*Id.* at 2.)  This is in accordance with Fed. R. Civ. P. 4(d) regarding waiver of service.  Defendant Hubbel filed a Rule 12 motion on July 31, 2012, less than 60 days after June 11, 2012. (*See* Doc. No. 166.)  Therefore, Defendant Hubbel did not fail to timely answer a complaint  and default judgment should not be entered against Defendant Hubbel. Furthermore, the Court recommends dismissal of Plaintiff's claim against Defendant Hubbel without prejudice and without leave to amend.  Accordingly, the Court recommends Plaintiff's motions for default judgment be **DENIED**.

## Conclusion and Recommendation

For the reasons stated above, the Court recommends:

1.  Defendants' motion to dismiss Plaintiff's first claim against Defendants Mills and Barra for sexual assault and excessive force in violation of his Eighth Amendment rights be **GRANTED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**;

2.  Defendants' motions to dismiss Plaintiff's second claim against Defendant Barra for inadequate medical care in violation of his Eighth Amendment rights be **GRANTED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**.

/ / /

/ / /

3.   Defendant Hubbel's motion to dismiss Plaintiff's second claim against Defendant Hubbel for inadequate medical care in violation of his Eighth Amendment rights be **GRANTED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**.

4.   Defendants' motion to dismiss Plaintiff's third claim against Defendant White for violation of his Fourteenth Amendment due process rights be **GRANTED WITHOUT LEAVE TO AMEND**;

5.   Defendants' motion to dismiss Plaintiff's third claim against Defendant Janda for violation of his Fourteenth Amendment due process rights be **GRANTED WITHOUT LEAVE TO AMEND**;

6.   Defendants' motion to dismiss Plaintiff's third claim against Defendant Janda based upon qualified immunity be **DENIED WITHOUT PREJUDICE**; and

7.   Plaintiff's motions for default judgment against Defendant Hubbel be **DENIED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. 636(b)(1).

   **IT IS HEREBY ORDERED** that no later than **February 19, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 5, 2013** of being served with the objections.

   **IT IS SO ORDERED.**

DATED: January 31, 2013

**BERNARD G. SKOMAL**
United States Magistrate Judge

26

10cv2642-AJB