1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10
CONDALEE MORRIS,                        )   Civil No. 10cv02642 AJB (BGS)
11                                          )
           Plaintiff,                   )   ORDER:
12                                          )
     vs.                                )   (1) ADOPTING IN PART AND
13                                          )   DECLINING TO ADOPT IN PART
M. BARRA; L. MILLS; D. WHITE; G.        )   THE R&R, (DOC. NO. 227);
14  J. JANDA; MACE; JANE DOE; AND        )
D. HUBBLE,                              )   (2) OVERRULING PLAINTIFF'S
15                                          )   OBJECTIONS IN PART, (DOC. NO.
           Defendants.                  )   233);
16                                          )
                                        )   (3) GRANTING IN PART AND
17                                          )   DENYING IN PART
                                        )   DEFENDANTS' MOTION TO
18                                          )   DISMISS, (DOC. NO. 151);
                                        )
19                                          )   (4) GRANTING DEFENDANT
                                        )   HUBBEL'S MOTION TO DISMISS,
20                                          )   (DOC. NO. 166); AND
                                        )
21                                          )   (5) DENYING PLAINTIFF'S
                                        )   MOTIONS FOR DEFAULT
22                                          )   JUDGMENT, (DOC. NOS. 175, 177,
                                        )   & 210)
23  _____ )

24        Before the Court are Plaintiff's Objections, (Doc. No. 233), to Magistrate Judge

25  Skomal's Report and Recommendation ("R&R") entered February 1, 2013, (Doc. No.

26  227).  In the R&R, Judge Skomal recommended the following: (1) Grant in Part and

27  Deny in Part the Motion to Dismiss filed by Defendants Mills, Janda, White, and Barra,

28  (Doc. No. 151); (2) Grant the Motion to Dismiss filed by Defendant Hubbel, (Doc. No.

166); and (3) Deny Plaintiff's three pending Motions for Default Judgment against Defendant Hubbel, (Doc. Nos. 175, 177, 201).  For the reasons set forth below, the Court ADOPTS IN PART AND DECLINES TO ADOPT IN PART the pending R&R, (Doc. No. 227).  The Court OVERRULES IN PART AND GRANTS IN PART Plaintiff's objections to the R&R, (Doc. No. 233) as noted in this order.[1]  As such, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss filed by Defendants Mills, Janda, White, and Barras, (Doc. No. 151), GRANTS Defendant Hubbel's motion to dismiss, (Doc. No. 166), and DENIES Plaintiff's motions for default judgment, (Doc. Nos. 175, 177, & 210).[2]

## *BACKGROUND*

### *I.    Procedural Background*

On April 12, 2012, Plaintiff Condalee Morris, a state prisoner proceeding *pro se* and *in forma pauperis,* filed his third amended complaint ("TAC") in this action alleging claims under 42 U.S.C. § 1983.  (Doc. No. 138.)  On May 2, 2012, Defendants Barra, Janda, Mills, and White filed a motion to dismiss the TAC pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  (Doc. No. 151.)  Defendants allege Plaintiff failed to exhaust his administrative remedies as to his claims against Mills and Barra and failed to state a claim against White and Janda.  (Doc. No. 151.)  After some discovery and extensions of time, Plaintiff filed a response in opposition on December 7, 2012, *nunc pro tunc* to November 15, 2012.  (Doc. No. 221.)  Defendants filed a reply in support of their motion on November 30, 2012.  (Doc. No. 213.)

On July 31, 2012, Defendant Hubbel (erroneously sued as Hubble) also filed a motion to dismiss Plaintiff's TAC pursuant to Rule12(b) for failure to exhaust

---

[1] To the extent that Plaintiff's objections are overruled, they are expressly addressed in this Order. Objections to the R&R wherein Plaintiff supplied new allegations or evidence and upon which leave to amend is granted are sustained.

[2] Defendant Mace has subsequently filed a motion to dismiss Plaintiff's claims based upon Plaintiff's alleged failure to effect service. (Doc. No. 230.) Defendant Mace's motion to dismiss was filed after Judge Skomal's issuance of the R&R, and it is not addressed therein. That matter remains before Judge Skomal.

administrative remedies.  (Doc. No. 166.)  Despite being given a generous extension of time to file an opposition, Plaintiff did not file a response to Defendant Hubbel's motion to dismiss.  (*See* Doc. No. 198.)  However, Plaintiff previously filed three motions for entry of default against Defendant Hubbel, asking the Court to enter a judgment against Defendant Hubbel for $48.6 million dollars.  (Doc. Nos. 175, 177, & 210.)

Defendants' motions to dismiss as well as Plaintiffs' three motions for entry of default judgment against Defendant Hubbel were referred to Magistrate Judge Skomal for an R&R.  Magistrate Judge Skomal recommended (1) Defendants' motion to dismiss be granted in part and denied in part, (2) Defendant Hubbel's motion to dismiss be granted, and (3) Plaintiff's motions for default judgment be denied.  (Doc. No. 227.)  The R&R directed the parties to file any written objections before February 19, 2013.  (*Id.* at 26.)

On February 14, 2013, Plaintiff filed a motion for an extension of time in which to file his objections (Doc. No. 232).  While his request remained pending, Plaintiff's objections were filed on February 19, 2013.  (Doc. No. 233.)  Accordingly, the Court denied Plaintiff's request for an extension of time as moot, (Doc. No. 234), and Defendants Barra, Hubbel, Janda, Mills, and White filed their reply to Plaintiff's objections on March 5, 2013.  (Doc. No. 236.)  Plaintiff has also filed three supplemental declarations in support of his objections to the R&R that have been considered herein. (Doc. Nos. 238, 242, & 243.)

## II.    *Factual Background*

As previously noted, Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis*.  In his TAC, Plaintiff brings claims pursuant to 42 U.S.C. § 1983 against Defendants.  Specifically, Plaintiff alleges Mills and Barra sexually assaulted Plaintiff and used excessive force in violation of his Eighth Amendment rights.  (Doc. No. 138 at 5-9.)  Plaintiff further alleges Barra, Mace, and Hubbel violated his Eighth Amendment right to adequate medical care.  (*Id.* at 10-13.)  Additionally, Plaintiff claims White and Janda violated his Fourteenth Amendment right to due process.  (*Id.* at 14-17.)  All of

1   Plaintiff's claims against Defendants arise out of an encounter Plaintiff had with Mills

2   and Barra on August 12, 2010, the medical treatment made available to Plaintiff

3   following this encounter, and a disciplinary hearing regarding the encounter held on

4   September 8, 2010.

5   **A.    Plaintiff's Allegations Against Mills and Barra for Excessive Force**

6   According to Plaintiff's TAC, Plaintiff and inmate Garcia went to the dining hall

7   for dinner on August 12, 2010.  (Doc. No. 138 at 5.)[3]  Upon walking into the dining hall,

8   Defendant Mills asked Plaintiff to go back out of the hall and tuck in his shirt.  (*Id.*)

9   Plaintiff complied, but untucked his shirt again before he sat down at the table.  (*Id.*)  On

10  his way out of the dining hall, Defendant Mills stopped Plaintiff and asked to see his i.d.

11  card.  (*Id.*)  Plaintiff told Defendant Mills he did not have one.  (*Id.*)  Defendant Mills then

12  searched Plaintiff for contraband and weapons, but did not find anything. (*Id.*)  Plaintiff

13  and Garcia then went to the "B" yard clinic to get their medication.  (*Id.*)

14  While Plaintiff was waiting at the "B" yard clinic for Garcia to get his medication,

15  Defendant Mills asked Plaintiff to walk with him back to the front of the dining hall.

16  (*Id.*)  Plaintiff told Defendant Mills that he "was a coward and a follower and that he

17  don't have any guts."  (*Id.* at 5-6.)  Plaintiff and Garcia then returned to the front of the

18  dining hall with Defendant Mills.  (*Id.* at 6.)  Defendant Barra was standing at the front of

19  the dining hall when they arrived.  (*Id.* at 6.)  Defendant Mills again searched Plaintiff

20  and grabbed and squeezed Plaintiff's testicles.  (*Id.* at 6.)  Plaintiff alleges he did not

21  resist or threaten the officer in any fashion or break any prison rules during his encounter

22  with Defendant Mills.  (*Id.* at 6.)  Plaintiff alleges he suffered swollen testicles and

23  testicular dysfunction as a result of Defendant Mills's excessive force.  (*Id.* at 6.)

24  After Defendant Mills searched Plaintiff and grabbed his testicles, Plaintiff said to

25  Defendant Barra, "your [sic] a punk bitch, why don't you do your own dirty work

26  yourself."  (*Id.* at 7.)  Defendant Barra then searched Plaintiff and grabbed and squeezed

27

28  _____
    [3] Throughout this Order, citations to the docket will reference the CM/ECF
    pagination unless otherwise noted.

Plaintiff's testicles.  (*Id.* at 7.)  Defendant Barra's search of Plaintiff did not reveal any contraband or weapons.  (*Id.* at 7.)  Plaintiff  alleges Defendant Barra, in using excessive force during his search, caused serious injury to Plaintiff's testicles and inflicted pain upon Plaintiff.  (*Id.* at 7.)  Plaintiff alleges he did not resist or threaten Defendant Barra in any fashion or break any prison rules during this encounter.  (*Id.* at 8.)  After Defendant Barra squeezed Plaintiff's testicles, Plaintiff clenched his fist because he was in so much pain.  (*Id.* at 7.)  Defendant Barra then ordered Plaintiff to turn around and "cuff up."  (*Id.* at 7.)  Plaintiff complied, was placed in handcuffs, and escorted to facility "B" medical clinic.  (*Id.* at 7.)

Upon arriving at the "B" yard medical clinic, Defendants placed Plaintiff in holding cell number one.  (*Id.* at 8.)  Upon entry, Defendant Barra instructed Plaintiff to walk to the back of the cage and face the wall, which Plaintiff did.  (*Id.* at 8.)  Defendant Barra closed the door, locked it, stuck his hands into the tray slot, and grabbed the handcuffs, causing Plaintiff to fall back against the door and injure his wrist.  (*Id.* at 8.)  When Plaintiff tried to stand up, Defendant Barra pulled on the handcuffs again causing Plaintiff to fall back into the door a second time.  (*Id.* at 8.)  Plaintiff alleges he suffered swollen wrists as a result.  (*Id.* at 8.)

### B. Plaintiff's Allegations Against Barra, Mace, and Hubbel for Denial of Medical Care

Plaintiff alleges Defendant Mace witnessed the assault by Defendant Barra on him in the "B" yard clinic.  (*Id.* at 10.)  According to Plaintiff's TAC, Plaintiff also complained to Defendant Mace about the sexual assault committed by Defendants Mills and Barra.  (*Id.* at 10.)  Plaintiff alleges  Defendant Barra interfered with Defendant Mace's job, causing Defendant Mace to not treat Plaintiff's swollen testicles, swollen wrist, and substantial pain.  (*Id.* at 10.)  Plaintiff was denied and delayed medical care for sixteen days.  (*Id.* at 10.)  Defendant Mace also allegedly fabricated CDCR7219 in order to conceal Defendants Mills and Barra's actions.  (*Id.* at 10-11.)

/ / /

Thereafter, Plaintiff was placed in administrative segregation ("Ad-Seg") on August 12, 2010. (*Id.* at 11.)  After being placed in Ad-Seg, Plaintiff complained to Ad-Seg medical staff member Defendant Hubbel about the sexual assault by Defendants Mills and Barra and about Defendant Barra's assault in the "B" yard clinic.  (*Id.* at 12.)  Defendant Hubbel ignored and failed to respond to Plaintiff's medical complaints.  (*Id.* at 12.)  Plaintiff wrote a 602 grievance concerning the sexual assault by Defendant Mills and Barra on August 12, 2010.  (*Id.* at 12.)  On August 13, 2010, Plaintiff wrote two sick call requests, seeking appointments for his wrist injury and the sexual assault, but Plaintiff only received treatment for his wrist injury.  (*Id.* at 12.)  Plaintiff alleges that from August 12 to August 27, 2010, he suffered pain as a result of a delay in treatment of his swollen testicles.  (*Id.* at 12-13.)  Plaintiff suffered swelling that caused him to be unable to sleep, walk, close his legs, or urinate without pain.  (*Id.* at 13.)  On August 27, 2010, Plaintiff was removed from Ad-Seg and placed in central medical before being taken to Pioneers Memorial Healthcare District for the examination of his testicles.  (*Id.* at 13; *id.* at 47-49.)  While there, Plaintiff was diagnosed with testicular swelling and dysfunction.  (*Id.* at 13; *id.* at 47-49.)

## C.  Plaintiff's Allegations Against White and Janda for Due Process Violations

Following his encounter with Defendants Mills and Barra, Plaintiff wrote a 602 grievance stating that he was sexually assaulted by Mills and Barra and claiming they were trying to cover up the assault by saying Plaintiff committed an assault and battery on a peace officer.  (*Id.* at 14.)  On August 21, 2010, Plaintiff received a disciplinary charge for battery on a peace officer based on his encounter with Mills and Barra.  (*Id.* at 14.)

The rules violation report ("RVR") contains the following version of events.  (*Id.* at 54.)  The RVR states Plaintiff began clenching his fists after stating to Defendant Barra that he is "a punk bitch, why don't you do your own dirty work yourself."  (*Id.* at 54.)  Barra then ordered Plaintiff to cuff up and escorted Plaintiff to holding cell number one

10cv02642

in the "B" yard clinic. (*Id.*) Barra instructed Plaintiff to turn around in order to remove the handcuffs. (*Id.*) As Barra placed his handcuff key in the handcuffs to remove them, Plaintiff turned his body to the left and pulled Barra forward into the cell cuff port, causing Barra's forearms to strike the cuff port opening. (*Id.*) When Barra attempted to remove the handcuff key, Plaintiff continued pulling Barra into the cuff port opening. (*Id.*) Plaintiff and Barra were then evaluated by on duty medical staff, who documented the injuries Barra sustained as a result of Plaintiff's actions. (*Id.*)

Plaintiff had his disciplinary hearing on September 8, 2010 before Defendant White. (*Id.* at 15.) Plaintiff asked Defendant White to call inmate Garcia, Defendant Mills, Defendant Barra, Correctional Officer Coronado, Lieutenant Sigler, Defendant Mace, and Registered Nurse Herrera as witnesses at the hearing. (*Id.* at 14-15.) Defendant White only called Defendant Barra as a witness and failed to call the other six witnesses Plaintiff requested. (*Id.* at 15.) Defendant White stated that he was not going to call the other witnesses because they would not provide any new or relevant information for the hearing. (*Id.* at 15.) Following the hearing, Plaintiff received a written disposition signed by Defendant White and finding him guilty as charged based on a preponderance of the evidence submitted at the hearing. (*Id.* at 15.) The written disposition noted the evidence included employees' written reports and photographs taken of cell number one in the "B" yard clinic. (*Id.* at 15.) As a result of his being found guilty of a Division "D" offense, Plaintiff was originally assessed ninety (90) days forfeiture of credit. (*Id.* at 70, 72.) On September 20, 2010, Defendant Janda, a Chief Disciplinary Officer ("CDO"), reviewed Defendant White's findings and disposition. (*Id.* at 87, 92, 93.) On September 24, 2010, Defendant Janda again reviewed the findings and disposition, and noticed the RVR was originally misclassified as a Division "D" Offense when the correct classification of the RVR was a Division "B" Offense. (*Id.*) Accordingly, Defendant Janda disallowed all credit loss initially assessed and reclassified the offense as a Division "B" offense. (*Id.* at 87, 92, 93.)

/ / /

1    Plaintiff filed an administrative appeal with Defendant Janda complaining that only

2    one of Plaintiff's witnesses was called by Defendant White.  (TAC at 16; *see id.* at 37-39,

3    98-100.)  Defendant Janda denied Plaintiff's appeal.  (*Id.* at 16.)  Plaintiff contends Janda

4    should have ordered a remand and rehearing because Defendant White failed to call all of

5    his witnesses, the offense was later reclassified as a Division "B" offense, a serious

6    offense, and because Plaintiff was assessed a twelve-month segregated housing unit

7    ("SHU") term.  (*Id.* at 16-17.)

### *LEGAL STANDARD*

8

9    A district court has jurisdiction to review a magistrate judge's R&R's on

10   dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must determine de novo

11   any part of the magistrate judge's disposition that has been properly objected to."  *Id.*  "A

12   judge of the court may accept, reject, or modify, in whole or in part, the findings or

13   recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The Court

14   reviews de novo those portions of the R&R to which specific written objection is made.

15   *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).  "The

16   statute makes it clear that the district judge must review the magistrate judge's findings

17   and recommendations de novo if objection is made, but not otherwise."  *Id.*

### *DISCUSSION*

18

19   Plaintiff makes specific objections to several aspects of Judge Skomal's R&R.

20   Additionally, Plaintiff more broadly "objects to each and every respect of the Magistrate

21   Judge['s] order except as expressly admitted."  *Id.*  The Court will first address Plaintiff's

22   specific objections.

23   **I.    Plaintiff's Objection to the Recommendation to Dismiss Plaintiff's Excessive
        Force Claims Against Mills and Barra for Failure to Exhaust Administrative**
24   **Remedies**

25   In the R&R, Magistrate Judge Skomal concluded Plaintiff failed to exhaust his

26   administrative remedies as to his excessive force claims against Defendants Mills and

27   Barra because he did not include the required Rights and Responsibilities Statement ("the

28   Statement") necessary to comply with the grievance procedures for submitting his appeal.

1   (Doc. No. 227 at 11.)  Thus, the R&R recommends the dismissal of Plaintiff's claims
2   without prejudice and without leave to amend.

3        Plaintiff does not suggest that he actually submitted the Statement as required.
4   Instead, Plaintiff contends Defendants have not established his failure to exhaust his
5   administrative remedies because the 2010 Statement impermissibly references an
6   unconstitutional provision from the California Penal Code.  As set forth in significant
7   detail in the R&R, the Ninth Circuit deemed certain language in California Penal Code §
8   148.6 unconstitutional in *Chaker v. Crogan*, 428 F.3d 1215 (9th Cir. 2005).  While
9   Plaintiff admits the language found unconstitutional was not itself included in the 2010
10  Statement, Plaintiff nevertheless objects to the remaining reference to California Penal
11  Code § 148.6.

12       The Court finds Plaintiff's objection unpersuasive.  Plaintiff admits he was
13  required to file the Statement in order to proceed in the administrative grievance process
14  in 2010, and he also admits that the 2010 Statement did not include the language found
15  unconstitutional in *Chaker*.  Attached to his objection, Plaintiff includes a 2006
16  California Department of Corrections and Rehabilitation memorandum sent out to
17  wardens discussing the impact of *Chaker* on their procedures.  (Doc. No. 233 at 7.)  As a
18  result of *Chaker*, the memorandum states "the Division of Adult Institutions will
19  immediately stop utilizing the advisory for allegations of staff misconduct."  (*Id.*)
20  Plaintiff contends this language "clearly refers to (Rights and Responsibility Statement
21  form) [sic] from 2006."  (*Id.* at 2.)  In this regard, Plaintiff appears to be correct.
22  However, Plaintiff ignores the following language from the memorandum: "California
23  Code of Regulations, Sections 3391(d) and 3084.1(e) are being modified to eliminate
24  references to the now unconstitutional law."  (*Id.* at 7.)  As noted in the R&R, Rights and
25  Responsibility Statements are required pursuant to Section 3084.1(e), and the proper
26  form is set forth in Section 3391(d).  Rather than dispensing with the Statement's
27  requirement entirely, the memorandum suggests these provisions were being modified in
28  2006 in order to reflect the Ninth Circuit's holding in *Chaker*.  As a result, the Court

10cv02642

1  concludes the memorandum is not dispositive on the issue of Plaintiff's exhaustion of

2  administrative remedies.

3         Additionally, Plaintiff has provided the 2006 Statement form which did include the

4  unconstitutional language from California Penal Code § 148.6.  However, the 2006

5  Statement is irrelevant to Plaintiff's situation in 2010.  Rather, the 2006 Statement

6  highlights the fact that the objectionable language had been removed from the required

7  2010 Statement at issue here.  Equally, the Court is unpersuaded by Plaintiff's contention

8  that Rights and Responsibility Statements are no longer required as of 2011.  Again, this

9  development is irrelevant to the claims at issue as Plaintiff initiated the grievance

10 administrative process in 2010 when a Statement was still required.

11        Significantly, the R&R addressed these issues and reached the same conclusion.

12 Plaintiff has offered no viable justification for departing from the R&R's

13 recommendation.  Accordingly, the Court OVERRULES Plaintiff's objection and

14 ADOPTS the R&R with regard to Plaintiff's excessive force claims against Defendants

15 Mills and Barra.  The Court notes Plaintiff's excessive force claims in the SAC were

16 dismissed for the same reasons, and Plaintiff has not been able to cure these deficiencies

17 in the TAC.[4]  Therefore, the Court DISMISSES these claims WITHOUT PREJUDICE

18 and WITHOUT LEAVE TO AMEND.

19 **II.    Plaintiff's Objection to the Recommendation to Dismiss the Denial of Medical**
20 **        Care Claims Against Defendants Barra and Hubbel for Failure to Exhaust**
   **        Administrate Remedies**

21        **A.    Relevant Factual Background**

22        In the TAC, Plaintiff alleges he was improperly denied medical care for his

23 swollen testicles during the period of August 12, 2010 to August 27, 2010.  (TAC at 10,

24

_____

25        [4] The Court notes it previously dismissed Plaintiff's excessive force claims against
   Mills and Barra with prejudice in its adoption of the R&R associated with Plaintiff's
26 SAC.  Plaintiff nevertheless reasserted these claims in his TAC.  However, Defendants
   ask that the excessive force claims be dismissed without prejudice, but also without leave
27 to amend.  (Doc. No. 213 at 2.)  Judge Skomal recommends the same.  Accordingly, the
   Court considered Plaintiff's amended excessive force claims despite the previous
28 dismissal with prejudice and now dismisses them without prejudice but also without
   leave to amend.

12.)  Pursuant to Cal. Code Regs. tit. 15, § 3084.6(c), Plaintiff had fifteen working days to submit his Form 602 appeal; however, Plaintiff did not filed his Form 602 regarding the denial of medical care until November 6, 2010.  (Doc. No. 166-2 at 13 (Plaintiff's denial of medical care 602 Form dated November 6, 2010).)  Thus, Plaintiff's 602 appeal was rejected as untimely, and the rejection instructed Plaintiff to "submit an explanation and supporting documentation explaining why you did not or could not file your appeal timely" within fifteen working days.  (*Id.* at 17 (rejection of 602 appeal letter).)  Plaintiff, however, did not file his explanation regarding his failure to file the 602 until December 6, 2010.  (Doc. No. 166-2 at 19, Ex. 4 (Section D formal appeal of previous rejection of 602 form as untimely).)  Thereafter, Plaintiff's Section D appeal was also denied as untimely, and Plaintiff's appeal was cancelled.  (Doc. No. 166-2 at 19, Ex. 5 (rejection of Section D appeal).)  The rejection of the Section D appeal informed Plaintiff he could file a separate appeal of the cancellation decision.  (*Id.*)

### B.   Analysis of Plaintiff's Objection to R&R

As with Plaintiff's excessive force claims, Judge Skomal concluded Plaintiff failed to exhaust his administrative remedies regarding his denial of medical care claims against Barra and Hubbel.  (Doc. No. 227 at 13.)  Specifically, Judge Skomal noted the following: (1) Plaintiff initially failed to timely file his Form 602 appeal regarding the denial of medical care, and (2) Plaintiff subsequently failed to appeal the cancellation of his initial appeal or pursue his appeal further such that there is no final decision on the issue at the Director's level.  (*Id.*)  For these reasons, the R&R recommends dismissal of Plaintiff's denial of medical care claims against Barra and Hubbel without prejudice and without leave to amend based upon Plaintiff's failure to exhaust administrative remedies.

In Plaintiff's objection, Plaintiff acknowledges that he filed his grievance past the deadline.  (Doc. No. 233 at 14.)  However, Plaintiff argues he waited to file his grievance because he was told by ISU officer Garcia he needed to wait for the completion of the ISU investigation and receipt of the ISU report before he could file a formal grievance.  (*Id.*)  He also argues that prison regulations caused him to believe he needed to wait for

1   completion of the ISU investigation before filing a formal grievance.  (*Id.*)  Plaintiff

2   contends there remains unresolved questions of fact as to whether Garcia and others

3   informed him that the grievance process was unavailable until termination of the ISU

4   investigation.  Based on these allegations, Plaintiff contends he has exhausted his

5   administrative remedies as to his denial of medical care claims against Barra and Hubbel.

6       The record reveals Plaintiff received his copy of the staff complaint response

7   following the investigation into his excessive force and sexual assault allegations by

8   October 5, 2010 at the latest.[5]  The staff complaint response informed Plaintiff that the

9   inquiry into his claims was complete and he would not receive any further details

10  regarding the investigation.  However, even assuming Plaintiff was told he did not have

11  to file his grievance until after he received this report, Plaintiff then had fifteen working

12  days to submit his appeal pursuant to Cal. Code Regs. tit. 15, § 3084.6(c) and failed to do

13  so.  Plaintiff did not file his grievance until November 6, 2010, which makes it untimely

14  even if he was waiting until receiving the report to file.  Moreover, Plaintiff failed to

15  submit his explanation for his delay in filing within the fifteen day time period set forth in

16  the initial rejection of his appeal.  Based on these facts, Plaintiff's actions were untimely

17  regardless of any alleged misinformation from the officials.

18      Additionally, as noted in the R&R, Plaintiff also had the opportunity to appeal the

19  cancellation of his appeal.  (Doc. No. 227 at 13-14.)  The rejection letter clearly informed

20  Plaintiff of his ability to pursue the issue further through the administrative process by

21  filing a separate appeal of the cancellation decision.  (Doc. No. 166-2 at 23, Ex. 5.)  Thus,

22  Plaintiff had not fully exhausted his administrative remedies in this regard as he still had

23  administrative avenues to pursue regarding his denial of medical care claims.

24      Further, the Court finds the regulations cited by Plaintiff do not excuse his failure

25  to exhaust administrative remedies.  Beyond referencing Cal. Code Regs. tit. 15, §

26  3005(b) and 3084.1(a), Plaintiff does not provide any explanation as to how these

27

28      [5] (Doc. No. 227 at 16 (citing Doc. No. 221 at 24 (staff complaint response dated October 1, 2010), 24 (Plaintiff's dissatisfaction with staff complaint response dated October 5, 2010).)

10cv02642

provisions caused him to untimely file his 602 appeal.  As noted by Judge Skomal, this Court previously rejected Plaintiff's argument regarding Section 3084.1(a) as "it is not clear how this regulation induced Plaintiff to delay filing his grievance" and he has provided no further explanation here.  (*See* Doc. No. 227 at 14, 15; Doc. No. 134 at 12.) Similarly, Plaintiff does not explain in his objections how Section 2005(b) relates to his untimely filing of the 602 appeal.  Plaintiff has previously asserted that Section 3005(b) requires inmates to obey verbal orders and directions from departmental staff therefore he was required to wait for the ISU report before filing his medical care grievance.  (Doc. No. 221 at 35.)  Even assuming department staff instructed Plaintiff to wait for his excessive force and sexual assault report, Plaintiff still failed to file his report within fifteen days of receiving the report, failed to timely explain his delay in filing the report, and also failed to appeal the cancellation of his Section D appeal in order to receive a final ruling.

Based on these considerations, the Court finds Judge Skomal's recommendation reaches the correct result.  For the reasons set forth above, Plaintiff failed to exhaust his administrative remedies regardless of any remaining factual questions as to whether Plaintiff was informed to wait to file his denial of medical care appeal until he received the report on his excessive violence and sexual assault claims.  Accordingly, the Court OVERRULES Plaintiff's objection in this regard, ADOPTS the R&R as to Plaintiff's denial of medical care claims, and GRANTS the motion to dismiss these claims by Defendants Barra and Hubbel.  As such Plaintiff's denial of medical care claims against Defendants Barra and Hubbel are hereby DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND.

**III.    Plaintiff's Objection to the Recommendation to Dismiss Plaintiff's Due Process Claim Against Defendant White**

In the R&R, Judge Skomal considered Plaintiff's claim against Defendant White alleging violation of his Fourteenth Amendment right to procedural due process.  (Doc. No. 227 at 20.)  This Court previously dismissed Plaintiff's due process claim against

Defendant White without granting Plaintiff leave to amend because Plaintiff failed to identify a liberty interest, such as a loss of good-time credits, to support his claim of a due process violation.  (Doc. No. 134 at 15.)  Insomuch as Plaintiff did not have leave to amend his claim against Defendant White and finding Plaintiff's allegations against Defendant White in his TAC to be identical to those alleged in his SAC, Judge Skomal recommended Plaintiff's claim be dismissed without leave to amend.  (Doc. No. 227 at 20.)

Plaintiff argues, however, that the TAC contains different factual allegations that sufficiently plead a due process claim against Defendant White.  Specifically, Plaintiff contends: (1) the TAC alleges Plaintiff lost good-time credits, and (2) the TAC mentions the possibility Plaintiff would receive a twelve-month segregated housing unit ("SHU") term.  (Doc. No. 233 at 95.)  The Court considers each of proffered bases for finding Plaintiff sufficiently pled a due process claim against Defendant White individually.

### A.   Violation of Due Process Resulting from Loss of Good-Time Credits

With regard to the loss of good time credits, Plaintiff's TAC and accompanying documents reveal Plaintiff was initially assessed a ninety-day forfeiture of good-time credits when his violation was categorized as a Division "D" offense.  (Doc. No. 138 at 70, 72.)  However, those credits were restored when Defendant Janda reviewed the disposition for a second time and determined the violation was more appropriately considered a Division "B" offense.  (*Id.* at 87.)  When Defendant Janda reclassified the violation, he also disallowed the ninety-day credit loss initially assessed for the supposed "D" violation.  (*Id.* at 87, 92, 93.)  Based on the records submitted by Plaintiff, Plaintiff did not in fact suffer a loss of good-time credits.  As a result, Plaintiff has failed to identify a liberty interest as necessary to support a due process violation claim on this basis.

//

//

//

10cv02642

**B.     Violation of Due Process Based Upon the Imposition of a Twelve-Month SHU Term**

Plaintiff also asserts the twelve-month SHU term assessed as a result of his Division "B" violation violates his rights to due process.  (Doc. No. 233 at 95-97.)  He further alleges Defendant White "personally participated in the (SHU) assessment" and, thus, should be held liable for violating Plaintiff's right to due process.  (*Id.* at 97.)  Having reviewed Plaintiff's TAC and Plaintiff's response to Defendants' motions to dismiss, this is the first time Plaintiff alleges a due process violation by Defendant White based upon the assessment of the SHU term.  As a result, the R&R does not address the SHU term within its discussion of Plaintiff's due process claim against Defendant White.

Even construing Plaintiff's TAC with the liberality afforded to allegations made by *pro se* prisoners, it is readily apparent the SHU assessment is not the basis of Plaintiff's due process claim against Defendant White as articulated in the TAC.  Plaintiff's claim as alleged in the TAC focuses upon Defendant White's failure to call Plaintiff's six witnesses at the disciplinary hearing.  Prior to this point, the SHU term assessment has not been mentioned by Plaintiff with regard to Defendant White in any way.  The Court finds nothing in the TAC alleging a due process claim against Defendant White on this basis.  Plaintiff's objections cannot now serve as a cure for the deficiencies identified in the R&R.  Accordingly, Plaintiff has failed to sufficiently allege a violation of due process claim against Defendant White based upon the SHU term assessment.

Moreover, the Court notes the TAC does not contain sufficient factual allegations regarding the SHU term to determine if it is a protected liberty interest under the Due Process clause or state law.  Typically, administrative segregation in and of itself does not implicate a protected liberty interest.[6]  Procedural protection is reserved for those cases

---

[6] *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 486 ("[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody."); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that the pre-sentencing prisoner had no liberty interest in being free from administrative segregation); *accord Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997) ("But it would be difficult (we do

10cv02642

imposing atypical and significant hardship on the prisoner beyond the ordinary incidents of prison life.  *Sandin*, 515 U.S. at 484; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).  Here, while it is unlikely the SHU term disrupts a protected liberty interest under the Due Process Clause or state law, Plaintiff has not provided any facts describing the nature of the SHU or the resultant impact on his life.  Without knowing more, the Court cannot make any determination as to whether the SHU term imposes an atypical and significant hardship upon Plaintiff's daily life such that it invokes due process protection.

Additionally, there are no factual allegations in the TAC or in the accompanying documentation suggesting Defendant White assessed the SHU term against Plaintiff.  The only connection between the SHU term and Defendant White provided in the TAC is a referral to a clinical psychiatrist, signed by Defendant White, requesting an evaluation of Plaintiff "before consideration by the Institutional Classification Committee (ICC) of a possible Security Housing Unit (SHU) term assessment."  (Doc. No. 138 at 71.) However, this referral does not indicate Defendant White actually imposed the SHU term; thus, Plaintiff must provide additional facts in order to allege a due process violation claim against Defendant White based upon the imposition of the SHU term.

On the whole, Plaintiff's due process claim against Defendant White based upon the SHU term assessment is entirely lacking.  In order to sufficiently allege a due process claim against Defendant White in this regard, Plaintiff must rectify each of the identified deficiencies.

/ / /

## C.    Conclusion

---

not say impossible) to make disciplinary segregation sufficiently more restrictive than the conditions of the general population ... to count as an atypical and significant deprivation of liberty[.]"); *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) ("We believe that as a matter of law these conditions of [standard administrative segregation] do not constitute an 'atypical and significant' hardship, ... when compared to the burdens of ordinary prison life.") (internal citation omitted).

10cv02642

For these reasons, the Court concludes Plaintiff's TAC does not sufficiently allege a due process claim against Defendant White based on either his failure to call Plaintiff's witness or the imposition of the SHU term.  Judge Skomal recommended that Plaintiff's due process violation claim against Defendant White based upon the failure to call Plaintiff's witnesses be dismissed without prejudice and without leave to amend, but did not consider any allegations regarding the SHU term as they had not yet been raised by Plaintiff.  For this reason, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART Judge Skomal's recommendation regarding Plaintiff's due process claim against Defendant White.  Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss Plaintiff's claims against Defendant White.  The Court hereby DISMISSES WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND Plaintiff's due process claim against Defendant White relating to his failure to call Plaintiff's witnesses.  However, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's due process claim against Defendant White relating to the assessment of the SHU term.

Should Plaintiff wish to amend his claim against Defendant White regarding the SHU term, Plaintiff must remedy the following deficiencies.  Plaintiff must provide sufficient factual allegations regarding the nature of the SHU term for the Court to determine whether the imposition of the SHU term constituted a violation of a protected liberty interest.  Specifically, Plaintiff should address the following factors:  (1) whether the conditions of confinement mirrored those conditions imposed upon inmates in analogous discretionary confinement settings, namely administrative segregation and protective custody, (2) the duration and intensity of the conditions of confinement; and (3) whether the change in confinement would inevitably affect the duration of the prisoner's sentence.  *See Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013.) Plaintiff must also allege facts sufficiently connecting Defendant White to the imposition of the SHU term as it is currently unclear whether he had any involvement other than

referring Plaintiff to a psychiatrist beforehand.  In the event Plaintiff fails to remedy these deficiencies, Plaintiff's claim will be dismissed accordingly.

## IV.   Plaintiff's Objection to the Recommendation to Dismiss Plaintiff's Due Process Claim Against Defendant Janda

In the R&R, Judge Skomal considered Plaintiff's due process claim against Defendant Janda and reached the following conclusions.  First, Judge Skomal noted this Court's previous dismissal of this claim because Plaintiff's SAC did not allege Defendant Janda failed to investigate or consider his appeal regarding Defendant White's failure to call Plaintiff's six witnesses, and therefore had not alleged a due process violation.  (Doc. No. 227 at 21 (citing Doc. No. 134 at 16-17).)  Having reviewed the allegations in the TAC, Judge Skomal determined Plaintiff's TAC had not remedied this deficiency and recommended dismissal of Plaintiff's claim accordingly.  (*Id.* at 21-22.)  Second, Judge Skomal addressed Plaintiff's new allegations in the TAC regarding Defendant Janda's reclassification Plaintiff's RVR from a Division "D" offense to a Division "B" offense, allegedly violating California Code of Regulations Title 15, Section 3313(c)(4).  (*Id.* at 22-23.)  Judge Skomal concluded Section 3313(c)(4) did not apply and there was no resultant loss of a liberty interest by Plaintiff such that Defendant Janda's actions constituted a due process violation.  (*Id.*)  Third, Judge Skomal found Plaintiff had not sufficiently alleged Defendant Janda personally participated in the SHU assessment as required to impose liability for the alleged due process violation associated with the SHU term.  (*Id.* at 24.)  For all of these reasons, Judge Skomal recommended that this Court dismiss Plaintiff's due process claim against Defendant Janda without prejudice and without leave to amend.

In his objections to the R&R, Plaintiff argues two primary grounds for his due process claim against Defendant Janda: (1) Defendant Janda improperly denied Plaintiff's administrative appeal and failed to order a rehearing regarding Defendant White's refusal to call six of Plaintiff's witnesses at his disciplinary hearing; and (2) Defendant Janda violated California Code of Regulations Title 15, Section 3312(b)(2) by

1   reclassifying Plaintiff's offense from a Division "D" offense to a more severe Division

2   "B" offense and thus imposing a more severe punishment upon Plaintiff as a result.

3   Judge Skomal addressed both of these issues in the R&R, but Plaintiff has provided

4   additional evidence with regard to the reclassification of his offense.  The Court will

5   consider each of Plaintiff's arguments individually below.

6   **A.   Violation of Due Process by Denying Plaintiff's Appeal**

7   Plaintiff contends Defendant Janda violated his due process rights by failing to

8   remand and order a rehearing of Plaintiff's disciplinary action based upon Defendant

9   White's failure to call Plaintiff's six witnesses.  (Doc. No. 233 at 110.)  Plaintiff argues

10  that he was denied due process at a hearing where he was found guilty, and the defect has

11  not been cured because Defendant Janda did not order a rehearing to rectify the initial due

12  process violation.  (*Id.*)  However, as set forth above with regard to Defendant White, the

13  Court has already determined Plaintiff has not alleged a due process violation regarding

14  the initial hearing.  As a result, Plaintiff's proffered rationale for finding Defendant Janda

15  violated his due process by virtue of failing to rectify Defendant White's violation of

16  Plaintiff's due process fails as well.

17  As such, the Court agrees with Judge Skomal's assessment in this regard and

18  concludes Plaintiff fails to allege a due process violation against Defendant Janda based

19  upon his denial of Plaintiff's appeal.  Like the SAC previously, the TAC simply does not

20  allege Defendant failed to investigate Plaintiff's claims or consider his appeal.  As a

21  result, Plaintiff has not alleged a due process violation against Defendant Janda for his

22  denial of Plaintiff's appeal regarding White's refusal to call Plaintiff's witnesses.

23  **B.   Violation of Due Process by Reclassification of Plaintiff's Offense**

24  Alternatively, Plaintiff argues Defendant Janda violated his right to due process

25  based upon Defendant Janda's "reclassifying his RVR as to a harsher serious offense

26  without order[ing] a rehearing as required by Section 3312(b)(1)(2)."  (Doc. No. 233 at

27  111.)  Section 3312(b)(1)(2) provides as follows:

28  / / /

> Except upon discovery of information or evidence not available or reasonably discoverable at the time of a disciplinary action, an order for a different method of discipline or for rehearing of the charges shall not result in greater penalty or more severe action than that originally taken.

Cal. Code Regs. tit. 15, § 3312(b)(2). Plaintiff contends Defendant Janda's reclassification of Plaintiff's offense violated Section 3312(b)(1)(2) because it resulted in a more severe classification of his offense and also a more severe punishment. In doing so, Plaintiff claims Defendant Janda also violated Plaintiff's right to due process.

As noted above, Plaintiff must allege the violation of a protected liberty interest in order to sufficiently allege a due process claim. *Sandin*, 515 U.S. at 477-78; *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013). Here, Plaintiff contends Defendant Janda's alleged violation of Section 3312(b)(1)(2) violated his right to due process. "A state may create a liberty interest through statutes, prison regulations, and policies." *Chappell v. Mandeville*, 706 F.3d at 1063. However, to find a violation of a state-created liberty interest such as the one at issue here, "the hardship imposed on the prisoner must be 'atypical and significant . . . in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484-84). In order to make this determination, courts must make a "factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *See Resnick*, 213 F.3d at 448; *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996); *Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996); *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996). "'What less egregious condition or combination of conditions or factors would meet the test requires case by case, fact by fact consideration.'" *Jackson*, 353 F.3d at 755 (quoting *Keenan*, 83 F.3d at 1089). However, courts should consider the following factors in each case: "(1) whether the conditions of confinement mirrored those conditions imposed upon inmates in analogous discretionary confinement settings, namely administrative segregation and protective custody, (2) the duration and intensity of the conditions of confinement; and (3) whether the change in

confinement would inevitably affect the duration of the prisoner's sentence."   *Chappell v.*
*Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013.)

As an initial matter, Defendant Janda's reclassification of Plaintiff's offense from a
Division "D" to a Division "B" offense does not impose an atypical or significant
hardship upon Plaintiff in and of itself.  As Judge Skomal pointed out in the R&R, it is
apparent Plaintiff's alleged offense is properly categorized as a Division "B" offense and
the initial Division "D" classification was in error.  (*See* Doc. No. 22-23.)  Under the
circumstances and contrary to Plaintiff's suggestion, Defendant Janda's reclassification
of the original Division "D" offense to the "more severe" Division "B" classification
does not impose an atypical and significant hardship upon Plaintiff in relation to the
ordinary incidents of prison life.  Plaintiff has not provided any evidence suggesting the
change in classification itself resulted in hardship for him.  Nor does Defendant Janda's
restoration of the ninety days of forfeited good-time credit associated with the Division
"D" offense constitute a due process violation as Plaintiff alleges.[7]

However, while the reclassification itself may not have imposed a hardship upon
Plaintiff,  Plaintiff also argues Defendant Janda's reclassification resulted in the
imposition of a greater penalty and a more severe action than that originally taken by
Defendant White. (Doc. No. 233 at 114.)  Originally, Defendant White's categorization
of Plaintiff's violation as a Division "D" offense was accompanied by the loss of ninety-
days of credits as a penalty.  When Defendant Janda reclassified the offense as a Division
"B" offense, Plaintiff alleges Defendant Janda then assessed a twelve-month SHU term as
the appropriate penalty.  Plaintiff contends this adjustment in his punishment constituted
the imposition of a "greater penalty or more severe action than that originally taken" by
Defendant White in violation of Section 3312(b)(2).  *See* Cal. Code Regs. tit. 15, §
3312(b)(2); (Doc. No. 233 at 114.)  As support for this argument, Plaintiff attached a

---

[7]  Somewhat confusingly, Plaintiff also alleges Defendant Janda's restoration of the
ninety days of good-time credits associated with a Division "D" offense constitutes
deprivation of Plaintiff's constitutionally protected liberty interest.  (Doc. No. 233 at
112.)  While Plaintiff may have a reasonable objection to the concurrent imposition of a
greater penalty than originally imposed, the Court is unclear how the restoration of good-
time credits could constitute deprivation of a constitutionally protected liberty interest.

10cv02642

1  SHU term assessment worksheet ("SHU worksheet") allegedly signed by Defendant

2  Janda and imposing a twelve-month SHU term against Plaintiff.  (Doc. No. 233 at 120.)

3      Unfortunately, Plaintiff failed to attach the SHU worksheet to the TAC.  As a

4  result, Judge Skomal concluded Plaintiff had not sufficiently alleged a due process

5  violation by Defendant Janda because it was "unclear from Plaintiff's TAC how

6  Defendant Janda was associated with any subsequent SHU term assessment following the

7  RVR, as Plaintiff does not allege that Defendant Janda participated in the assessment

8  process, reviewed any assessment, or denied Plaintiff any required procedural protections

9  in connection with a SHU assessment."  (Doc. No. 227 at 23.)  Finding no factual

10 allegations connecting Defendant Janda to the SHU assessment, it was unnecessary for

11 Judge Skomal to further consider whether the imposition of the SHU term in violation of

12 Section 3312(b)(2) constituted a due process violation as alleged by Plaintiff.

13     There being no SHU worksheet attached to the TAC, the Court agrees with Judge

14 Skomal's determination that the TAC fails to sufficiently connect Defendant Janda to the

15 imposition of the SHU term.  Again, Plaintiff's objections may not serve to cure the

16 deficiencies of his pleadings.  Moreover, while Judge Skomal did not reach this issue

17 within the R&R, the Court concludes Plaintiff has not sufficiently pled the deprivation of

18 a protected liberty interest as there are no factual allegations regarding the nature of the

19 SHU term or its impact on his daily life in prison.  As discussed above with regard to

20 Plaintiff's due process claim against Defendant White, Plaintiff has not provided any

21 factual allegations regarding the nature of the SHU term beyond its duration.  There are

22 no factual allegations describing the conditions of the general population or the

23 conditions in the SHU such that the Court can make a comparison.  Nor has Plaintiff

24 alleged any specific hardships associated with the SHU in relation to his basic conditions

25 of life as a prisoner.  Plaintiff has not alleged the SHU term would have any effect upon

26 the duration of his sentence.  On the whole, Plaintiff makes minimal reference to the SHU

27 term in the TAC and his objections, and none of his references suggest a basis for finding

28 the SHU term imposes an atypical or significant hardship on Plaintiff.

Without any relevant factual allegations, the Court cannot make a fact by fact assessment of whether the SHU term constitutes a liberty interest protected by due process. Nor does the TAC sufficiently allege Defendant Janda imposed the twelve-month SHU term based upon the reclassification of Plaintiff's offense. As a result, Plaintiff has failed to allege a due process claim against Defendant Janda violated his due process rights by imposing the twelve-month SHU term.

**C.    Conclusion**

In sum, the Court agrees with Judge Skomal's conclusion that the TAC fails to allege a due process violation claim against Defendant Janda. With regard to Defendant Janda's allegedly improper denial of Plaintiff's appeal, this claim was previously dismissed because the SAC did not allege Defendant Janda failed to investigate or consider Plaintiff's appeal. The TAC did not remedy this deficiency despite having the opportunity to do so. Under the circumstances, the Court finds it appropriate to dismiss this aspect of Plaintiff's claim against Defendant Janda without prejudice and without leave to amend.

However, Plaintiff has submitted evidence, in the form of the SHU worksheet attached to his objection, that may remedy the lack of connection between Defendant Janda and the imposition of the SHU term. Plaintiff may also be able to allege additional facts demonstrating the SHU term imposes an atypical and significant hardship upon him beyond the ordinary incidences of prison life. As a result, the Court grants Plaintiff leave to amend his due process claim solely with regard to the alleged improper assessment of the SHU term in violation of Section 3312(b)(2). *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).

Based on the foregoing, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART Judge Skomal's recommendation as to Plaintiff's due process claim against Defendant Janda. Thus, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss Plaintiff's claims against Defendant Janda. The Court hereby DISMISSES WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND Plaintiff's due process claim against Defendant Janda pertaining to his denial of

Plaintiff's appeal despite Defendant White's failure to call Plaintiff's witnesses. However, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's due process claim against Defendant White relating to the assessment of the SHU term and GRANTS Plaintiff leave to amend his claim accordingly.

As noted above with regard to Defendant White, should Plaintiff wish to amend his due process claim against Defendant Janda regarding the SHU term, Plaintiff must remedy the following deficiencies.  Plaintiff must provide sufficient factual allegations regarding the nature of the SHU term for the Court to determine whether the imposition of the SHU term constituted a violation of a protected liberty interest.   Specifically, Plaintiff should address the following factors:  (1) whether the conditions of confinement mirrored those conditions imposed upon inmates in analogous discretionary confinement settings, namely administrative segregation and protective custody, (2) the duration and intensity of the conditions of confinement; and (3) whether the change in confinement would inevitably affect the duration of the prisoner's sentence. *See Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013.)  Plaintiff must also allege facts sufficiently connecting Defendant Janda to the imposition of the SHU term as it is currently unclear in the TAC whether Defendant Janda assessed the twelve-month SHU term following the reclassification of Plaintiff's offense.  In the event Plaintiff fails to remedy these deficiencies, Plaintiff's claim will be dismissed accordingly.

## V.    Plaintiff's Objection to the Recommendation to Deny Plaintiff's Requests for Default Judgment Against Defendant Hubbel

In the R&R, Judge Skomal also considered Plaintiff's three pending motions for default judgment against Defendant Hubbel.  (Doc. Nos. 175, 177, and 210.)  In these motions, Plaintiff asks the Court to enter default judgment in Plaintiff's favor against Defendant Hubbel in the amount of $48.6 million dollars.  The R&R recommends that Plaintiff's motions be denied as Defendant Hubbel timely filed a Rule 12(b) motion within 60 days of receiving the request for waiver of service as required by the Federal Rules of Civil Procedure.  (Doc. No. 227 at 25.)

10cv02642

First, Plaintiff objects to the Judge Skomal's recommendation based on Hubbel's failure to serve Plaintiff with his signed waiver of service within 21 days of its execution. (Doc. No 233 at 34-39.)  The Court notes Plaintiff does not provide any basis for this alleged requirement so the Court turns first to the rules governing waiver of service. Under Rule 4(d) of the Federal Rules of Civil Procedure, a plaintiff may request that the defendant waive service of a summons.  If a defendant in the United States waives service of process in a timely manner, defendant "need not serve an answer to the complaint until 60 days after the request was sent."  Fed. R. Civ. P. 4(d)(3).  Having reviewed Rule 4, there does not appear to be a requirement that a defendant serve the waiver upon Plaintiff within 21 days.  In fact, Rule 4(d)(1)(F) states that a plaintiff should give the defendant a reasonable time of "at least 30 days after the request was sent . . . to return the waiver." Notably, this language does not suggest the waiver must be served upon Plaintiff, and it also requires Plaintiff to give Defendants at least 30 days to return the waiver.  Here, Defendant Hubbel returned the waiver to the U.S. Marshal within 30 days of it being mailed, and the U.S. Marshal forwarded the waiver on to Plaintiff.  Accordingly, it appears Defendant Hubbel satisfied the waiver provisions under Rule 4(d).

Assuming for argument's sake Plaintiff did not ultimately receive the waiver of service from the U.S. Marshal, the Court is not convinced default judgment would be the appropriate remedy.  As noted by Defendants in their reply to Plaintiff's objections, Plaintiff "provides no authority that Defendant Hubbel was required to serve him with the waiver within 21 days or suffer a default judgment --because there is none."  (Doc. No. 236 at 14.)  Under Rule 55 of the Federal Rules of Civil Procedure, the entry of default is available in limited circumstances.  Specifically, the Clerk of Court may enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . .."  The waiver of service itself stated judgment may be entered against Defendant Hubbel "if an answer or motion under Rule 12 is not served upon [Plaintiff] within 60 days after June 11, 2012 . . .."  (Doc. No. 160.)  This is simply not the case here; Defendant timely filed a motion to dismiss Plaintiff's claims within 60 days as required by the waiver and the Federal Rules of Civil Procedure.  (Doc.

10cv02642

1  No. 166.)  Thus, there being no default by Defendant Hubbel, default judgment under

2  Rule 55(b)(2) is inappropriate.

3      In his objections, Plaintiff relied upon Federal Rule of Civil Procedure 12(a)(1)(i)

4  for his contention that Defendant Hubbel failed to respond to the TAC within 21 days as

5  required.[8]  (*Id.*)  In doing so, Plaintiff failed to address the impact of Defendant Hubbel's

6  waiver of service under Rule 4(d).  Under Rule 12(a)(1)(A)(i), defendants must serve an

7  answer within 21 days of being served with a summons and complaint *unless* they have

8  timely waived service under Rule 4(d).  As noted above, if service is timely waived,

9  defendants located in the United States then have 60 days to respond from the date the

10  request for waiver was sent. Fed. R. Civ. P. 12(a)(1)(A)(ii).   Here, Defendant Hubbel

11  waived service and subsequently filed a motion to dismiss within 60 days of June 11,

12  2012.  Therefore, Defendant Hubbel satisfied the time requirements under Rule

13  12(a)(1)(A)(ii).[9]

14      In light of these considerations, the Court agrees with Judge Skomal's

15  recommendation to deny Plaintiff's motions for default.  Accordingly, the Court

16  OVERRULES Plaintiff's objections in this regard, ADOPTS the recommendation

17  / / /

18  / / /

19  / / /

20  regarding default judgment set forth in the R&R, and, thus, DENIES Plaintiff's motions

21  for default judgment, (Doc. Nos. 175, 177, & 210).**[10]**

23   [8] Moreover, the Court notes Rule 12(a)(1)(A) relates to a defendant's time for
serving ***responsive pleadings***, not service of the waiver itself.

25   [9] On June 11, 2012, the U.S. Marshal mailed a copy of the summons and TAC to
Defendant Hubbel.  (Doc. No. 160.)  On June 29, 2012, the U.S. Marshal received a
26  waiver of service from Defendant Hubbel and mailed a copy of the waiver to the Court
and to Plaintiff.  (*Id.*)  Thereafter, on July 31, 2012, Defendant Hubbel filed a Rule 12
motion within sixty days of waiving service.

28   [10] Within his objections regarding the motions for default judgment, Plaintiff also
asserts the Court has abused its discretion by not granting or scheduling an Early Neutral
Evaluation ("ENE") Conference in this case.  (Doc. No. 233 at 38, 39.)  On May 29,
2012, Judge Skomal denied Plaintiff's Motion for an ENE Conference and Settlement

**VI.    Plaintiff's Objection to the Court's Denying as Moot His Request for an Extension of Time to File Objections to the R&R**

As noted above, Plaintiff initially requested an extension of time in which to file his objections to the R&R.  (Doc. No. 232.)  While his request was pending before the Court, his objections were timely filed.  (Doc. No. 233.)  Thus, the Court denied his request for an extension as moot.  (Doc. No. 234.)

However, Plaintiff argues in his objections to the R&R that the Court abused its discretion by denying his request for a continuance.  Plaintiff contends the Court deprived Plaintiff of a reasonable opportunity to prepare his objections to the R&R.  (Doc. No. 233 at 31.)  Under the circumstances, this assertion is not supported by the record.  Despite Plaintiff's suggestion that he did not have time to prepare his objections, Plaintiff managed to compile a 171-page document in which he makes detailed objections to the contents of the R&R and the individual claims addressed therein.  Moreover, this document was timely filed.  As a result, the Court did not abuse its discretion in denying Plaintiff's motion for an extension as moot under the circumstances.

Plaintiff further contends he needed additional time in order to find out the names of the officials working when he was told he had to wait to file his denial of medical care claim until he received the excessive force and sexual assault report.  (*Id.* at 30, 31, 129.)  He argues this information would preclude dismissal of his denial of medical care for failure to exhaust his administrative remedies and would support the entry of default judgment against Defendant Hubbel.  (*Id.*)

---

Conference as there had been no answer filed in the case.  (Doc. No. 153.)

In his objections, Plaintiff suggests Judge Skomal should have scheduled an ENE Conference as a result of the alleged default by Defendant Hubbel.  The Court disagrees for two reasons.  First, as explained above, Defendant Hubbel did not default in this action.  Second, Civil Local Rule 16.1.e.8 specifically states "ENE conferences will not be set in Section 1983 Prisoner cases."  Moreover, even in non-prisoner cases, the Court may decline to hold an ENE prior to defendants filing an answer if the judge determines an ENE Conference is not appropriate at the time.  Civ. L. Rule 16.1.  Thus, to the extent Judge Skomal denied Plaintiff's request to schedule an ENE Conference, it is not an abuse of discretion as the decision is in accordance with the Court's Civil Local Rules.  Thus, to the extent Plaintiff raises an objection in this regard, it is OVERRULED.

10cv02642

As an initial matter, the Court notes Plaintiff made no reference to discovery or the necessity of finding out the information regarding the prison officials in his request for an extension of time.  Plaintiff simply made general statements regarding his need for time to present an adequate defense and to serve the ends of justice.  (Doc. No. 232.)  The only specific justification offered for the requested extension related to Plaintiff's involvement in a pending state case.  (*Id.* at 2, 3.)  Specifically, Plaintiff advised the Court that he would be in state court for hearings on two days in February and would be making arguments in that case as the attorney of record.  (*Id.*)  Presumably, Plaintiff offered this information to demonstrate the need for additional time, but Plaintiff nevertheless filed his objections within the requisite time period.  As a result, the Court reasonably concluded Plaintiff no longer needed an extension of time and denied the request as moot.

Secondarily, the discovery issues raised by Plaintiff in his objections are not determinative on the denial of medical care claims or the entry of default judgment against Hubbel.  As set forth above, Plaintiff failed to exhaust his administrative remedies as to the denial of medical care claims regardless of whether prison officials informed him to wait until he received the report on his excessive force and sexual assault claims.  As a result, the names of the officers at work during that time period would not save Plaintiff's denial of medical care claims.  Similarly, the Court denied Plaintiff's requests for entry of default judgment against Hubbel because Hubbel timely responded to Plaintiff's TAC under Federal Rules of Civil Procedure 4(d)(3) and 12(a)(1)(A)(ii).  There is no reason the discovery issues referenced by Plaintiff in his objections would warrant reaching a different result as to Plaintiff's motions for default judgment.

Having reviewed Plaintiff's arguments and the relevant record, the Court disagrees with Plaintiff's contention that it abused its discretion when denying as moot Plaintiff's request for an extension of time in which to file his objections.  Plaintiff's objections were timely filed, and have now been fully considered in this Order.  Accordingly, Plaintiff's objection in this regard is OVERRULED.

**VII.   Plaintiff's Broad Objection to the Entirety of Judge Skomal's Order**

10cv02642

In addition to his specific objections to the recommendations in the R&R, Plaintiff also "objects to each and every respect of the Magistrate Judge['s] order except as expressly admitted." (Doc. No. 205, p. 2). However, Plaintiff has not referenced any additional factual or legal issues within Judge Skomal's order to support this broad objection. Having considered the R&R as a whole, it appears that Judge Skomal carefully reviewed the pending motions, the applicable law, and the relevant facts as presented by Plaintiff. Thus, Plaintiff's objection to the entirety of Judge Skomal's R&R is OVERRULED.[11]

### ***CONCLUSION***

For the reasons set forth above, the Court hereby ADOPTS IN PART and DECLINES TO ADOPT IN PART Judge Skomal's R&R. (Doc. No. 227.) In doing so, Plaintiff's objections to the R&R are OVERRULED IN PART. (Doc. No. 233.) It is further ORDERED as follows:

1.   The Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss, (Doc. No. 151);

2.   The Court GRANTS Defendant Hubbel's motion to dismiss, (Doc. No. 166);

3.   Accordingly, Plaintiff's excessive force claims against Defendants Mills and Barra are DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND for failure to exhaust administrative remedies;

4.   Plaintiff's due process claim against Defendant White based upon his failure to call Plaintiff's witnesses at the disciplinary hearing is DISMISSED

---

[11] Additionally, the Court notes Rule 72(b) suggests the Court need only consider "specific written" objections to a magistrate judge's R&R. *See Goney v. Clark*, 749 F.2d 5, 7 (3rd Cir. 1984) (stating that word-for-word review of magistrate's report due to general objections would undermine judicial efficiency); *Page v. Lee*, 337 F.3d 411, 416 n. 3 ("petitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim."); *Howard v. Sec'y of Health and Human Serv.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effect as would a failure to object."); *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review."). *But cf. Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) (finding a de novo review appropriate given a concise record even though petitioner's objections lacked specificity).

WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND for failure to state a claim upon which relief can be granted;

5. Plaintiff's due process claim against Defendant White based upon the imposition of the twelve-month SHU term is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted;

6. Plaintiff's due process claim against Defendant Janda based upon his denial of Plaintiff's appeal is DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND for failure to state a claim upon which relief can be granted;

7. Plaintiff's due process claim against Defendant Janda based upon his alleged violation of Section 3312(b)(2) when assessing the twelve-month SHU term is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted;

8. Plaintiff's motions for default judgment against Defendant Hubbel are DENIED, (Doc. Nos. 175, 177, & 210);

9. Plaintiff is GRANTED leave to file a Fourth Amended Complaint ("FAC") against Defendants White and Janda with regard to the assessment of the twelve-month SHU term; and

10. If Plaintiff elects to file a FAC in accordance with this Order, it must be filed within thirty days of this Order. Failure to file a FAC within the time allowed will result in the dismissal of this action WITH PREJUDICE.

Furthermore, the Court admonishes Plaintiff that the leave to amend granted in this Order is limited in nature. Plaintiff may only amend his due process claims against Defendants White and Janda as necessary to allege a due process violation based upon the assessment of the twelve-month SHU term. Plaintiff may not file amended claims against Defendants Mills, Barra, and Hubbel. If Plaintiff's Fourth Amended Complaint reasserts claims dismissed in this Order without leave to amend, those claims may be summarily dismissed as previously ruled upon by the Court.

1     **IT IS SO ORDERED.**

2

3  DATED:  March 22, 2013

4

                                          Hon. Anthony J. Battaglia

5                                        U.S. District Judge

10cv02642