# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONDALEE MORRIS,<br><br>    Plaintiff,<br><br>vs.<br><br>M. BARRA; L. MILLS; D. WHITE; G.J. JANDA; MACE; JANE DOE; AND D. HUBBLE,<br><br>    Defendant. | CASE NO. 10-CV-2642-AJB (BGS)<br><br>ORDER:<br><br>1. ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE, (Doc. No. 284);<br><br>2. OVERRULING PLAINTIFF'S OBJECTIONS, (Doc. No. 289);<br><br>3. GRANTING DEFENDANT MACE'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, (Doc. No. 249);<br><br>4. DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MACE, (Doc. No. 274);<br><br>5. DENYING PLAINTIFF'S REQUEST FOR REFERRAL TO MEDIATION PROGRAM, (Doc. No. 274). |

    Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Skomal, recommending this Court (1) GRANT Defendant Mace's motion to dismiss Plaintiff's Third Amended Complaint ("TAC"); (2) DENY Plaintiff's motion for default judgment against Mace; and (3) DENY Plaintiff's stipulation to request

court to refer case to pro se mediation program. (Doc. No. 284.)  After some initial confusion as to whether Plaintiff received a copy of the R&R, Plaintiff filed an Objection to the R&R on November 12, 2013. (Doc. No. 289.)  Though untimely, the Court nevertheless considers the Objection as Plaintiff is incarcerated and proceeding *pro se*.[1]  Mace filed her Reply on November 15, 2013. (Doc. No. 290.)

## I. BACKGROUND

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis*.  On April 12, 2012, Plaintiff filed his TAC alleging claims under 42 U.S.C. § 1983, and specifically a violation of his Eighth Amendment right to adequate medical care against Mace. (Doc. No. 138 at 1).  Plaintiff's claim against Mace arises out of an encounter he had with Defendants Mills and Barra on August 12, 2010, and the subsequent medical care he received from Mace.  Plaintiff alleges that Defendant Mace witnessed an assault by Barra on him in the "B" yard clinic on August 12, 2010. (*Id*. at 10.)  Plaintiff also complained to Mace about a sexual assault on him committed by Mills and Barra. (*Id.*)  However, Barra interfered with Mace's job, causing Mace to not treat Plaintiff's swollen testicles, swollen wrist, and pain. (*Id.*)  Plaintiff was denied and delayed medical care for sixteen days. (*Id.*)  Plaintiff also alleges that Mace fabricated CDCR7219 in order to conceal Mill's and Barra's actions. (*Id.* at 10-11.)

On August 12, 2010, Plaintiff was placed in administrative segregation.  According to Plaintiff, he suffered swelling, causing him to be unable to sleep, walk, close his legs, or urinate without pain. (*Id.* at 13.)  He was removed from administrative segregation on August 27, 2010 and placed in central medical before being taken to Pioneers Memorial Healthcare District, where he was diagnosed with testicular swelling and dysfunction. (*Id.*)

---

[1] Plaintiff attempted to submit two Objections. One dated November 5, 2013, in which Plaintiff states he has not yet received the actual R&R but that he objects to each and every aspect that is not in his favor (*hereinafter* "Objection 1"). This Objection does not appear on the docket but will be filed along with this Order. The second dated November 6, 2013, in which Plaintiff states he has received the R&R. (Doc. No. 289.) The Court will consider both of these documents in ruling on the instant matter.

**A.      Plaintiff's Administrative Appeal**

Plaintiff commenced an administrative action on November 6, 2010 by filling out a Form 602 grievance regarding medical care, alleging that Mace witnessed the assault and fabricated CDCR 7219 to conceal the other Defendants' actions. (Doc. No. 249 at 34). Plaintiff requested Mace be held liable for the physical and emotional injury resulting from her failure to provide adequate medical care. (*Id.*) The appeal was not given a log number.

On November 18, 2010, Plaintiff's first level of appeal was screened out by the Calipatria Appeals Coordinator in a written notice. (*Id.* at 38.) Plaintiff's appeal was returned to him because "there [was] too great a time lapse between when the action or decision occurred and when [Plaintiff] filed [his] appeal with no explanation of why [he] did not or could not file in a timely fashion." (*Id.*) The notice instructed Plaintiff to submit an explanation and supporting documentation explaining why he did not or could not file his appeal timely in order to further pursue his appeal. (*Id.*) Plaintiff was to do so within fifteen working days. (*Id.*)

On December 6, 2010, Plaintiff submitted Section D of Plaintiff's unnumbered appeal, explaining why he did not timely submit the appeal. (*Id.* at 40.) Plaintiff stated that he was waiting on all of the 115 hearing documents concerning battery on staff, which he received on September 20, 2010. (*Id.*) Plaintiff also wrote that there was an investigation occurring at the same time related to his appeal Log No. CAL-A-10-1870 and that he was waiting until the investigation was over in order to support his medical care appeal. (*Id.*)

On December 13, 2010, Plaintiff's unnumbered appeal was cancelled. (*Id.* at 44.) The decision letter stated that "[y]our explanation for submitting an untimely appeal is noted; however, it is not a valid or compelling argument to forward your appeal . . . Your appeal remains untimely. DO NOT RESUBMIT THIS APPEAL. This appeal has been cancelled and the original has been kept on file." (*Id.*) The letter further stated that "[o]nce an appeal has been cancelled that appeal may not be

resubmitted. However a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted." (*Id.*) There is no evidence that Plaintiff appealed the cancellation decision or pursued this appeal any further before filing the instant action.

**B.   Plaintiff's Complaint and Service Against Mace**

On December 10, 2010, Plaintiff filed his original complaint in federal court against all defendants, including Mace, for violations of his civil rights under 42 U.S.C. § 1983. (Doc. No. 1.) On February 10, 2011, Plaintiff filed a first amended complaint ("FAC"). (Doc. No. 7). On June 6, 2011, Plaintiff's service of the FAC and summons for Mace were returned unexecuted, with remarks that Mace no longer worked at the institution. (Doc. No. 16.) On August 12, 2011, Plaintiff filed a second amended complaint ("SAC") against all defendants.  The Court found that service of process was not properly conducted by the U.S. Marshal for Mace and ordered that the U.S. Marshal personally serve the summons and the SAC to Mace at a confidential address. (Doc. No. 134, at 3-4; Doc. No. 135.) The Marshal was unable to execute service due to an erroneous address. The Court then ordered the Attorney General assigned to the case to provide an available forwarding address to the Marshal for service of Mace. (Doc. No. 135.) On April 13, 2012, Deputy Attorney General Sylvie Snyder submitted a declaration in response stating that the address previously given to the Marshal was the only address on file for Mace. (Doc. No. 141.)

On April 12, 2012, Plaintiff filed the TAC against all Defendants. (Doc. No. 138.)  Service on Mace was returned unexecuted as the last known address was incorrect. (Doc. No. 157.) On April 4, 2013, the FAC summons for Mace was filed as executed by personal service, marked delivered on March 14, 2013 at the California Men's Colony in San Luis Obispo and signed by Joseph Hurrle, an inmate at Calipatria State Prison. (Doc. No. 246.) The Court issued an order to show cause to Plaintiff as to why the Court should not dismiss Mace pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for want of prosecution. (Doc. No. 248). Subsequent to that order,

on April 23, 2013, Mace filed a motion to dismiss Plaintiff's TAC. (Doc. No. 249). During the May 23, 2013 hearing on the order to show cause, counsel for Mace indicated that Mace preferred to have the matter decided on the merits pursuant to the motion to dismiss. (Doc. No. 261.) The Court thereby vacated the order to show cause.

In her motion to dismiss the TAC, Defendant Mace argues that: (1) Plaintiff's service of process was insufficient; (2) Plaintiff's service of process was untimely; and (3) Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (Doc. No. 249 at 6.) Plaintiff contends that service on Mace was properly effective as he received a summons returned executed by Joseph Hurrle, and subsequently filed that summons with the Court. (Doc. No. 274 at 2.) Plaintiff requests that default judgment be entered against Mace in the amount of $48.6 million dollars as she failed to timely file an answer. (*Id.* at 2-4.) Plaintiff acknowledges that he failed to timely file an appeal and thereby failed to exhaust his administrative remedies, but argues he only did so as a result of misconduct on the part of prison staff handling his appeal. (*Id.* at 16.)

The Court now considers the analysis and conclusions of the R&R in the order presented by Magistrate Judge Skomal. (Doc. No. 284.) Judge Skomal recommends this Court grant Defendant Mace's motion to dismiss the TAC for failure to exhaust administrative remedies without prejudice and without leave to amend. (*Id.* at 19.) Judge Skomal also presents the Court with several alternative options should the Court decline to adopt this particular recommendation. For the following reasons, the Court ADOPTS the R&R's conclusion that Plaintiff failed to properly exhaust his administrative remedies and GRANTS Defendant's motion to dismiss on this basis.

**II.   LEGAL STANDARD**

**A.   District Court's Review of a Magistrate Judge's R&R**

A district court has jurisdiction to review a magistrate judge's R&R's on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapio*, 328 F.3d 1114, 1121 (9th Cir. 2002) (en banc). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *Id.*

**B.     Motion to Dismiss for Failure to Exhaust Administrative Remedies**

The Ninth Circuit recognizes an unenumerated Fed. R. Civ. P. 12(b) motion to dismiss based on the failure to exhaust administrative remedies. *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012). The Prison Litigation Reform Act of 1995 provides that:

> [n]o action shall be brought with respect to prison conditions [under 42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.§ 1997e(a). "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. *McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657 (1967). "The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378 (2006) (internal citation and quotation marks omitted).

The doctrine serves two purposes. "First, exhaustion protects 'administrative agency authority.'" *Id*. It gives the agency an "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." "Second, exhaustion promotes efficiency," as claims can be resolved more quickly and economically as compared to litigation in federal court. *Id.* (internal citations and quotation marks omitted). Statutes requiring exhaustion are useful when a significant number of aggrieved parties, if given the choice, would not voluntarily exhaust. Some aggrieved parties may prefer to proceed directly to federal court for a number of reasons, including bad faith. *Id.* (citing *Thomas v. Woolum*, 337 F.3d 720, 752 (6th Cir. 2003) (Rosen, J., dissenting in part and concurring in judgment)).

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). If the district court concludes that the prisoner failed to exhaust, the claim should be dismissed without prejudice. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059, (9th Cir. 2007). Failure to exhaust may not be waived. *Woodford*, 548 U.S. at 85-86. Under the PLRA, "exaustion is mandatory . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Nor can a prisoner who did not attempt to utilize the complete prison grievance system sidestep the exhaustion requirement by arguing that it would be futile to attempt to exhaust within the prison system. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2002) ("we stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

## III. DISCUSSION

After considering the evidence regarding Plaintiff's administrative appeal, Judge Skomal concluded that Plaintiff failed to exhaust his administrative remedies with respect to his claims against Mace. As Plaintiff "objects to each and every aspect that is not in his favor," this Court will review de novo Judge Skomal's findings. (Objection 1.)

### A. California's Prisoner Grievance Process

California has a "relatively simple" grievance process for prisoners who seek to challenge the conditions of confinement. *See Woodford*, 584 U.S. at 85. In 2010, under the regulations in place when Plaintiff filed his 602 form, to exhaust the grievance process, a prisoner must proceed through several levels of appeal:[2] (1) informal resolution; (2) formal written appeal on a CDC 602 inmate appeal ("Form 602"); (3) second level of appeal to the institution head or designee; and (4) third level appeal to

---

[2] In 2011, the California Department of Corrections and Rehabilitation inmate formal administrative appeals process underwent a major revision, including the discontinuation of the informal appeal process. *See* 2011 CA REG TEXT 248824 (NS.)

the Director of the California Department of Corrections and Rehabilitation ("Director").[3] Cal. Code Regs. Tit. 15, § 3084.5; *Woodford*, 584 U.S. at 85-86.

In the Ninth Circuit, an inmate exhausts his administrative remedies when no pertinent relief remains available to him through the prison appeal process. *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005). In California, an appeals coordinator screens each appeal before forwarding it for review on the merits. Cal. Code Regs. tit 15, § 3084.3. The appeals coordinator may screen out an inmate appeal for several reasons, including untimeliness or incompleteness. *Id.* When an appeal is screened out, the inmate must be notified of the reasons for the rejection and the corrections that are needed in order for the appeal to be accepted. *Id.* In general, an inmate must file an appeal or amended appeal within fifteen working days of the disputed or adverse action. *Id*. § 3084.6(c).

The Ninth Circuit has suggested that an inmate should challenge an improper screening. *See Sapp v. Kimbrell*, 623 F.3d 813, 826 (9th Cir. 2010) (noting that if plaintiff thought officials improperly screened out his appeal, he could have contested that decision "as boilerplate text at the bottom of the screening form advised him to do so"); *see also Smiley v. Martinez*, 2010 WL 309459, *3 (N.D. Cal. 2010) (plaintiff did not timely challenge the screening of his appeals based on untimeliness and duplication). These authorities are in accord with the Supreme Court's holding that proper exhaustion under the PLRA requires compliance with all the prison's deadlines and critical procedural rules. *Woodford*, 584 U.S. at 90-91.

**B.     Plaintiff's Administrative Appeals**

As noted above, Plaintiff's first level appeal was screened out on November 18, 2010, by the Calipatria Appeals Coordinator in a written notice for failure to file within fifteen working days of the incident. The alleged incident occurred on August 12, 2010 and Plaintiff was diagnosed with testicular swelling and dysfunction after he was

---

[3] For a more detailed discussion on California prisoner appeal process, the Court directs the readers attention to Judge Skomal's R&R. (Doc. No. 284 at 8-10.)

1  removed from administrative segregation on August 27, 2010. By the time of filing on
2  November 6, 2010, more than fifteen working days had passed. Plaintiff was directed
3  to submit an explanation and supporting documentation explaining why he did not or
4  could not file a timely appeal in order to further pursue his appeal. (Doc. No. 249 at
5  38.) Plaintiff had fifteen working days to do so. In response, Plaintiff submitted
6  Section D on December 6, 2010, stating he was waiting for all of the 115 hearing
7  documents concerning battery on staff, which he finally received on September 20,
8  2010. (*Id.* at 40.) Plaintiff also stated that there was an investigation occurring at the
9  time related to his appeal Log No. CAL-A-10-1870, therefore he was waiting until the
10 investigation was over. (*See* Objections 1 at 18.) Plaintiff hoped to support his medical
11 claim with documents from that investigation. (*Id.*) As of the issuance of the R&R,
12 Plaintiff is unsure whether the investigation is still pending. (*Id.*) Plaintiff "waited and
13 waited" and as he was not "contacted by them, [he] went on and filed the 602 on
14 November 6, 2010. (*Id.*)

15  Plaintiff concedes that he filed his grievance past the deadline. However,
16 Plaintiff contends that his appeal was in regards to employee misconduct, which has
17 a one year deadline for filing from the time of misconduct. (Objection 1 at 16.)
18 Plaintiff directed the Court to a letter from the Calipatria Appeals Coordinator dated
19 December 13, 2010 regarding the screening at the first level filed in connection with
20 his TAC. The letter stated:

> "[y]our appeal was reviewed by the Chief Deputy Warden (CDW)/Hiring Authority in order to determine if your complaint met the requirements to be classified as a staff complaint. Upon conclusion of the CDW's review it was noted that your appeal did not meet the criteria to be classified as a staff complaint. Therefore, the appeal has been classified as a Legal appeal issue, and will be addressed as such."

Attached to that letter was CDC 965 screening form, explaining Plaintiff's appeal was untimely and directing him to submit an explanation and supporting documentation accounting for the untimeliness. (Doc. No. 138 at 41-42.) The letter went on to say that Plaintiff's explanation was noted, however it was invalid and a non-compelling reason to forward the appeal. Finally, the letter explained that once an appeal had been

cancelled, that appeal may not be resubmitted but a separate appeal on the cancellation decision can be filed. (*Id.*)

Judge Skomal found, and this Court agrees, that there is no evidence that Plaintiff appealed the cancellation of the appeal or pursued his appeal further in the administrative grievance system. Moreover, no evidence exists that would show Plaintiff was unable to submit a timely appeal of the cancellation decision to the second level within the time prescribed by Cal. Code Regs tit. 15 § 3084.6(c). If Plaintiff took issue with the classification of his appeal as "legal" instead of "employee misconduct," he could have timely filed an appeal of the cancellation based on such an argument.

Plaintiff's Objection goes on to state that prison officials took advantage of the exhaustion requirement when the prison employees engaged in affirmative misconduct to prevent Plaintiff from exhausting. (Objection 1 at 20.) While the Court is sympathetic to Plaintiff's position, there is simply no evidence to support his contention that prison officials engaged in any bad faith or misconduct to obstruct his appeals process. Indeed, when Plaintiff filed his first level appeal on November 6, 2010, it was immediately reviewed and screened out by November 18, 2010. That written notice contained an advisory note that Plaintiff had fifteen days to submit an explanation and supporting documents as to why he did not or could not timely file. (Doc. No. 249 at 38.) Based on the record before it, the Court finds that after Plaintiff started the appeals process, each of his submissions was met with a timely response and instructions therein of what his next step should be.

The Court also agrees with Judge Skomal's determination that Plaintiff failed to exhaust his administrative remedies even if his account of prison official misconduct were true. (Doc. No. 284 at 12.) Plaintiff failed to mention any misconduct in his Section D response explaining why he failed to timely appeal. (Doc. No. 274 at 21.) Moreover, the administrative review was still available to Plaintiff, despite any alleged misconduct, as the cancellation letter dated December 13, 2010 advised him that he may file a separate appeal of the cancellation decision. Therefore, if Plaintiff believed

the cancellation of his appeal was improper, he could have contested that decision as the letter contained "boilerplate text" that advised him of the option to do so. *See Sapp*, 623 F.3d 813. Accordingly, Plaintiff failed to pursue further appeal remedies as to Mace after being advised that the appeal had been cancelled.

After a de novo review of the parties' contentions and the record before it, the Court ultimately agrees with Judge Skomal's finding that Plaintiff's medical care grievance was untimely and that he failed to satisfy the PRLA's exhaustion requirement. (Doc. No. 284 at 12.) The Court OVERRULES Plaintiff's objections and GRANTS Defendant Mace's motion to dismiss the TAC for failure to exhaust administrative remedies without prejudice and without leave to amend.[4]

### C. Plaintiff's Request for Referral to Mediation Program

In Plaintiff's response in opposition to Mace's motion to dismiss as well as his objection to the R&R, Plaintiff includes a "stipulation to request court to refer case to pro se mediation program with Magistrate Judge Vadas." (Doc. No. 278 at 8; Objections 1 at 7.) Plaintiff states that both parties discussed and agree to request the court to refer this case to the prisoner pro se mediation program.

Although Plaintiff suggests that this is a joint request by both parties, the request is only signed by Plaintiff, with space for defense counsel's signatures left blank. Moreover, Mace's Reply fails to address this request, let alone affirm it. (*See* Doc. No. 290.) "The filer of any joint motion of other documents requiring more than one signature must certify that the content of the document is acceptable to all persons required to sign the document by obtaining either physical signatures or authorization for the electronic signature of all parties on the document." *Electronic Case Filing Administrative Policies and Procedures Manual*, Section 2(f)(4) (May 6, 2013.) As neither Defendant Mace nor her counsel has certified that the content of the joint request is acceptable by signing the document, the Court DENIES Plaintiff's request.

---

[4] The Court is able to dispose of the entire matter based on exhaustion of remedies, thus the Court declines to address Mace's motion to dismiss for insufficient and/or untimely service of process as both are rendered moot.

## IV. CONCLUSION

For the above foregoing reasons, the Court adopts Magistrate Judge Skomal's well reasoned R&R in its entirety. The Court hereby:

1) GRANTS Defendant Mace's motion to dismiss Plaintiff's TAC for failure to exhaust administrative remedies WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND;

2) OVERRULES Plaintiff's Objections;

3) DENIES Plaintiff's motion for default judgment against Defendant Mace; and

4) DENIES Plaintiff's request for referral to mediation program.

As all Defendants are terminated in this case, the Clerk of Court is instructed to close the above captioned action.

IT IS SO ORDERED.

DATED: January 2, 2014

_____
Hon. Anthony J. Battaglia
U.S. District Judge